NORMAN W. SWANSON, HENRY F. MURRAY, CARL L. WHITNEY, WILLIAM
E. NICHOLSON, III, CHARLES A. DANCY, MELVIN F. EYERMAN,
IRA N. SCHWARZ, JOHN L. POWELL, JR., GALINA ELWORTH, DONALD
V. WALLACE, WILLIAM E. DENTON, ROBERT A. NISBET, WALTER
J. BARTNIKOWSKI, RALPH P. HUNT, MARION B. ZOLLICOFFER,
WILLIAM H. TALBERT, BILLY CLARK, WALLACE M. DAVIS,
GRADY L. STRANGE, HAMILTON M. HOWE, MARY L. PRITCHARD,
ROBERT B. CAMPBELL, BROWNING ADAMS, PRITCHARD G. ADAMS,
WILLIAM H. ADAMS, EDWARD H. AND FLOSSIE P. ALLEN, JOSEPH
A. ALLEN, RACHEL C. ALLRED, HELEN L. AND LEO I. ANCTIL,
RONALD E. ANDERSON, CLARENCE P. ARMSTRONG, CARROLL W.
AUSTIN, F.L. AUSTIN, JR., DONALD P. BAHR, PAUL BALLUS, CHARLES
D. BARKER, SR., WALTER E. BARKHOUSE, EDWARD C. BARRET,
JAMES L. BAXTER, RUSSELL W. BEARD, BERNARD L. BEATTY,
RICHARD K. BELL, LEO E. BENADE, SHERMAN W. BETTS, JOSEPH
H. BETZ, ROBERT L. BLEVINS, FRANKLIN M. BLUNT, TIMOTHY C.
BOLICK, MARGARET C. BOONE, HENRY A. BOTKIN, ALEX BOURDAS,
OLA MAY (TATE) BOVENDER, EUGENE A. BOWEN, LAVAUNE K. BREDA,
MARLOWE G. BREDA, TROND G. BREKKE, LAURA B. BRENDLE,
MILLARD BRIDGERS, CLARENCE M. BRIDGES, DORIS K. BRIDGES,
CYRUS H. BROOKS, JR., DANIEL R. BROWN, K.A. BROWN, WILLIAM
D. BROWN, BETTY P. BULLOCK, ROBERT S. BULLOCK, FINDLEY BURNS,
JR., RAY G. BURRELL, RICHARD E. BUSH, JAMES M. BYRNE, NORMAN
L. CARLTON, MATTHEW E. CARMEAN, FRANK CATES, J. CRAWFORD
CATON, HARRY E. CHAMBERLAIN, VINCENT H. CHASE, PAUL F.
CHAVEZ, WOODROW H. CHILDRESS, JOHN G. CHURCH, HERMAN L.
CLANTON, ROBERT L. CLARKE, CHARLES C. CLAUSEN, SR., DENNIS
E. CLECKNER, STEVE P. CLEMENIC, LACY W. COATES, RUCIA A.
COBB, JAMES A. CODDINGTON, CATHERYN S. COLEY, LAURA K.
CONDER, JAMES C. CONINE, MARSHALL G. COOPER, ASBURY COWARD,
III, NEWTON P. COX, RUTH A. COX, BURNETTE E. CREASMAN, THOMAS
J. CULKIN, HAZEL B. CURLEE, MILTON L. DAIL, BEATRICE G. DAVIS,
BERNLEY S. DAVIS, DONALD M. DAVIS, ESSIE M. DAVIS, GEORGE
E. DAVIS, ROBERT J. DAVIS, CLIFFORD H. DAWSON, CALVIN F. DEAN,
ORIEN G. DEAN, JR., JACK M. DEATON, VIOLET B. DEITMARING, ARLEN
J. DEVITO, JOHN E. DEVLYN, SARA E. DEVLYN, JOY E. DICKINSON,
MRS. LEROY B. DICKINSON, JAMES E. DIFFEE, DELBERT R. DILLON,
MARGARET H. DOPF, RAYMOND E. DOPF, LEROY M. DUFFY, CHARLES
F. DUPONT, BOBBY R. EASON, DAVID EDMISTEN, CARL L. EFFLER,
JOHN H. ELDER, JR., JOHN R. ELLIS, MANFORD G. FARR, RITA FESTO,
JOHN J. FILAN, ANGELO A. FLORENTINO, ROBERT W. FOLDEN, OSCAR
F. FOWLER, MELVIN W. FRITZ, WALTON E. FULCHER, ROBERT C.
FULLER, WALTER E. FULLER, FRANK W. FURCHES, NORMAN CARL
GADDIS, MARSHALL L. GADDY, THOMAS B. GARDINER, ROBERT F.
GEISSLER, WILLIAM E. GENTNER, JR., THOMAS P. GINN, ROBERT
W. GOODMAN, JOHN R. GORDON, BERNICE C. GRANDY, JR., STEVEN
W. GRANDY, ROBERT J. GREEN, MICHAEL R. GREESON, JAMES H.
GRIFFIN, THOMAS M. GROOME, JR., JAMES W. GROSS, ARTHUR S.
GUNDERSON, HERT L. HANCOCK, JR., JAMES M. HARDIN, C. LEE
HARRIS, HOWARD W. HARRIS, PAUL H. HARVEY, ROLAND R.
HATCHER, HENRY S. HEFFLEY, JR., CARROLL A. HEFNER, CLARENCE

**SWANSON v. STATE OF NORTH CAROLINA**

[335 N.C. 674 (1994)]

J. HENSLEY, JR., RICHARD M. HERIOT, DORIS T. AND NOVIS S. HERRING, VIRGINIA R. HILDEBRAND, MOZELLE L. HINSHAW, HERMAN J. HIPPS, RUFUS M. HODGIN, DONALD R. HOFFMAN, CHARLES K. HOFFMEYER, MARY R. HOLLAND, EDGAR P. HOLT, RAY HOMESLEY, NED A. HOOD, ROBERT H. HOOD, STEPHEN W. HOPKINS, CLYDE L. HOWARD, JR., KEVIN G. HUGHES, HARVEY R. HURST, SAM P. HYATT, JOHN L. IRBY, MATTIE B. IVES, FRANCIS JACOBS, RICHARD L. JARRETT, JACQUELINE M. JENNINGS, WOODROW W. JONES, DONALD L. JORGENSON, KENNETH R. JOSEPH, PATSIE W. JOSEPH, EVERETTE R. KELLER, BERNARD J. KELLEY, WILSON P. KEMP, HOWARD LEE KERR, MARGARET C. KERR, WILLIAM S. KETNER, DAVID L.G. KING, THOMAS M. KING, JR., EVELYN W. KINNEY, JOHN E. KIRK, PAUL E. KIRKLAND, SR., RAYMOND B. KLEBER, GEORGE M. KNOBL, JR., WILLIAM F. KNOPF, MAX V. KREBS, WILLIAM J. KUHN, JR., JAMES M. LANGSTON, JR., JANE W. LANGSTON, ELMER L. LASHUA, JOHN L. LATHAM, DANIEL M. LAUDERBACK, AUGUST R. LAWRENCE, FREIDA H. AND NORWOOD P. LEWIS, HENRY G. AND DOROTHY J. LILES, WALTER E. LINTHICUM, PHYLLIS V. LIPPARD, GEORGE LOTT, ROBERT P. LUCAS, ALLEN M. MABE, THOMAS S. MACELUCH, WILLIAM F. MARCUSON, JR., WARNER G. MAUPIN, LYLTON E. MAXWELL, OLIVER A. MAYS, ANDREW G. MAYSE, SAMUEL S. McCACHREN, ELIZABETH S. McCASKILL, ELIZABETH G. McDONALD, CLYDE W. McKIRK, DONALD D. McGUIRE, NORMAN H. McLAUGHLIN, DOY K. McPHAIL, WILLIAM RAY MEDLIN, JR., ERNEST E. MILLER, MARGARET H. MILLER, EDGAR N. MILLINGTON, HAROLD J. MITCHENER, EUGENE E. MOODY, DOROTHY C. MOORE, JAMES C. MOORE, JR., LUCIE E. MOORMAN, ROBERT M. MOOSE, JACK B. MORRIS, REGENA E. MORRISON, STANLEY B. MORSE, WOODFORD T. MOSELEY, GEORGE R. MUSE, R.J. NETTLES, THOMAS G. NEWPORT, JOHN E. NITSCHE, ALFRED P. NORWOOD, JOHNNIE M. OCHOA, ELVIN E. OGLESBY, OLIVER G. OJA, RUSSELL E. OLSON, LLOYD A. OSBORNE, PAUL B. OSGOOD, WILLIAM C. PAGE, LEE R. PARAMORE, LEWIS W. PATE, CHARLES R. PATTON, VERNON J. PEEBLES, W.W. PEGUES, MARY E. AND JOHN D. PENN, ELLIOTTE T. PERKINS, JR., WILLIAM H. PERRY, JR., PAUL J. PHILLIPPI, RICHARD L. PHILLIPS, RUBY A. PHILLIPS, FRANK J. PIAZZA, SR., DALLAS PICKARD, JR., GEORGE A. PINTER, EDWARD W. PIPER, FREDERICK H. PLESS, R.F. HOKE POLLOCK, JR., LEWINGTON S. PONDER, ELBERT Y. POOLE, JENNETTE C. POOLE, MARTHA BOYCE POTEAT, EDWIN H. PRICE, CHARLES R. PUGH, DANIEL J. QUESENBERRY, MILTON H. QUINN, LOUISE M. RABBINO, THOMAS M. RAMSEY, JACK G. RAY, MARSHALL G. RAY, HAZEL S. REDMON, GEORGE R. REINHART, III, ANNIE E. RENKEL, MADGE O. REYNOLDS, FRANKLIN E. RICHARDSON, JR., ALLEN W. RIGSBY, GEORGE M. ROBERTS, JENNINGS B. ROBINSON, JAMES P. ROTH, PHIFER P. ROTHMAN, HAROLD E. RUBLE, HILDA H. RULTENBERG, DONALD E. RUSSELL, GEORGE W. SABO, LYLE E. SAMSON, ROBERT L. SCHEER, FREDERICK L. SCHUERMAN, SR., ROBERT J. SCHULLERY, ELWOOD M. SHAULIS, ROBERT T. SHERIDAN, STANLEY T. SHIPLEY, CHARLES B. SHIVELY, CHARLES A. AND RUTH M. SHUE, JR., ELSIE N. AND FREDERICK E. SIMMONS, MARY B. SIMPSON, MANUEL F. SIVERIO, JOSEPH A. SIZOO, EVELYN S. SMITH, GEORGE B. SMITH, JAMES A.

## SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

SMITH, JAMES E. SMITH, JAMES P. SMITH, JOE F. SMITH, PERCY H. SMITH, JOSEPH L. SOMMER, RAY H. SPANGLER, JAMES A. SPRANKLE, WILEY L. STANDIFER, JR., JAMES W. STARBUCK, GERTRUDE D. STARLING, STACY J. STARLING, HENRY C. STEED, JR., ROY C. STEELEY, ARTHUR L. STEWART, BURLENA J. STEWART, JOHN R. STEWART, JR., GEORGE W. STILLWAY, RITA M. STILLWAY, HAROLD E. STONE, CLYDE DALTON STOWE, HARRY H. STRUNK, E.C. STUMPF, THOMAS A. SUMMEY, JR., ELLIS G. SUMNER, LEO B. AND MILDRED Y. SUMNER, MARGARET K. SWINK, JAMES E. SYKES, OLIVER B. TALBERT, JAMES D. TERRELL, CLYDE E. AND EMOGENE M. THOMPSON, FRED L. TRACY, ROCCO H. TROMBELLO, JOHN G. TRUITT, JR., WILLIAM H. TURK, JAMES T. VANCE, FRANCES A. VANDEN, GEORGE W. VANDEN, ETHEL D. VANHORN, EDWARD J. VAUGHN, EDWARD VENKLER, ROY L. VICK, SR., KERMIT J. VINSON, MYRTLE H. VINSON, WILLIAM E. WADE, FLOYD H. WALDROP, WANDA E. WALLACE, ROLAND J. WEBER, GRACE F. WEINER, LONA C. WEISNER, LAWRENCE O. WELCH, PAUL B. WELCH, JR., GEORGE L. WESTERLIND, WILLIAM B. WHITE, T.M. WHITTINGTON, JR., GEORGE W. WILKINS, ROBERT S. WILLIAMS, JR., WILLIAM C. WILLIAMS, WINTON H. WILLIAMS, HAROLD P. WILLIAMSON, EDNA MAE WILSON, ROBERT GRAVES WILSON, JR., ERNEST G. WINSTEAD, PETER S. WONDOLOWSKI, ROBERT V. WOOD, MAYNARD B. AND EVELYN W. WOODBURY, JACK R. WORLEY, JOHN T. WORRELL, GEORGE T. WORRELL, GEORGE E. YALE, JR., AND WILLIAM P. YARBOROUGH, INDIVIDUALLY FOR THE BENEFIT AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, CLASS A PLAINTIFFS, CHARLES L. BERRY, ROBERT D. LENNON, ZEBULON V. MOSELEY, III, GARY W. O'NEAL, MILTON S. PRICE, MARTIN L. SPEICHER AND PAUL H. TURNEY, INDIVIDUALLY AND FOR THE BENEFIT AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, CLASS B PLAINTIFFS v. THE STATE OF NORTH CAROLINA, HELEN A. POWERS, INDIVIDUALLY AS SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF REVENUE, THE NORTH CAROLINA DEPARTMENT OF REVENUE AND HARLAN BOYLES, TREASURER OF THE STATE OF NORTH CAROLINA, DEFENDANTS

No. 64PA91

(Filed 4 March 1994)

**1. Taxation § 217 (NCI4th) — retirement benefits — lack of exemption for retired federal employees unconstitutional — no refund — procedure not followed**

The trial court improperly granted summary judgment for plaintiffs in a class action for refunds of state income tax paid on federal pensions after it was held to be unconstitutional to exempt state but not federal pensions from state income tax. The sole procedure by which a North Carolina taxpayer may challenge the legality of any tax is by N.C.G.S. § 105-267, which requires an individual notice, protest, or demand. Failure

SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

to comply with the statutory requirements bars a taxpayer's action against the State for a refund of taxes; a constitutional challenge to the tax does not exempt a taxpayer from following the statute's mandatory procedure. Although plaintiffs sent three class demand letters, those letters do not constitute refund demands as required by N.C.G.S. § 105-267.

**Am Jur 2d, State and Local Taxation § 1082.**

2. **Taxation § 217 (NCI4th) — taxation of federal pensions — procedure for refund — no violation of due process**
     The statutory tax refund procedure in N.C.G.S. § 105-267 does not transgress the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Although the statute does not permit North Carolina taxpayers to challenge the legality, or constitutionality, of a tax before paying the tax, the U.S. Supreme Court has long held that postdeprivation remedies in the area of taxation can comport with due process. North Carolina gives taxpayers desiring to challenge the illegality, or unconstitutionality, of a tax a clear and certain remedy and meaningful, backward-looking relief by providing a full refund of the tax if the challenge is successful. It also provides a clear and fair opportunity to contest the tax by the procedures set out in N.C.G.S. § 105-267.

**Am Jur 2d, State and Local Taxation § 1082.**

3. **Judgments § 270 (NCI4th) — taxation of federal pensions — constitutionality of refund procedure — parallel federal action — no final judgment**
     Neither res judicata nor collateral estoppel applied to a state action for refund of taxes paid on federal pensions where there was no final adjudication in the federal case.

**Am Jur 2d, Judgments § 457.**

Justice MITCHELL dissenting.

Justice PARKER joins in this dissenting opinion.

On remand from the United States Supreme Court. Heard in the Supreme Court 17 November 1993.

## SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

*Womble Carlyle Sandridge & Rice, by G. Eugene Boyce, and Charles H. Taylor for plaintiff-appellees.*

*Michael F. Easley, Attorney General, by Edwin M. Speas, Jr., Senior Deputy Attorney General, Thomas F. Moffitt and Norma S. Harrell, Special Deputy Attorneys General, and Marilyn R. Mudge, Assistant Attorney General, for defendant-appellants.*

EXUM, Chief Justice.

This is an action by plaintiffs, former federal employees and active duty federal military personnel and reservists, for the refund of certain income taxes paid by them before the 28 March 1989 decision of the United States Supreme Court in *Davis v. Michigan Department of Treasury*, 489 U.S. 803, 103 L. Ed. 2d 891 (1989). We conclude the action may not be maintained because plaintiffs failed to comply with the procedural prerequisites of N.C.G.S. § 105-267 (1992). We, therefore, reverse the entry of summary judgment for plaintiffs entered by the trial court and remand for entry of judgment for defendants dismissing the action.

Before *Davis*, twenty-three states, including North Carolina, exempted retired state employees from payment of income tax on pension benefits. Retired federal employees were exempt from payment of state income taxes on the first $3,000 of their pension benefits. There was no exemption for beneficiaries of private pensions. As of 1979, the first $1,500 of income for members of the North Carolina National Guard was excluded from taxation. In 1989, the State amended this benefit so that members of the National Guard received a $1,500 deduction. The State conferred no comparable benefit on members of the federal armed forces.

In *Davis* the United States Supreme Court held that a state statute exempting state employees' retirement benefits from taxation but not granting the same exemption to their federal counterparts violated the constitutional doctrine of intergovernmental tax immunity and 4 U.S.C. § 111 (1989). Under section 111 the federal government "consents to [state] taxation of pay or compensation for personal service as an officer or employee of the United States . . . if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation." 4 U.S.C. § 111.

## SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

Responding to *Davis*, the North Carolina General Assembly amended its taxation scheme. First, it repealed the tax exemption for the retirement benefits of state employees retroactive to 1 January 1989 and created a $4,000 exclusion for the retirement benefits of both state and federal employees. N.C.G.S. § 105-134.6(b) (1992). Second, it authorized federal retirees to claim a tax credit on their 1990, 1991, and 1992 income taxes for taxes paid in 1988 on their federal pensions. N.C.G.S. § 105-151.20 (1992). Third, it repealed the $1,500 deduction for National Guard compensation. 1989 N.C. Sess. Laws, ch. 1002 (1990).

This is the third time this case has come before us. We first held plaintiffs were not entitled to the refunds claimed because the decision in *Davis* did not apply retroactively. *Swanson v. State of North Carolina*, 329 N.C. 576, 407 S.E.2d 791 (1991) (*Swanson I*). Next we concluded, on rehearing, that certain provisions in our state constitution afforded plaintiffs no relief, and we reaffirmed our earlier decision. *Swanson v. State of North Carolina*, 330 N.C. 390, 410 S.E.2d 490 (1991) (*Swanson II*). The result of the *Swanson* decisions was to reverse the trial court's order granting plaintiffs income tax refunds for the years 1986 through 1989 and to dismiss plaintiffs' action.

Plaintiffs then petitioned the United States Supreme Court for review of the *Swanson* decisions. On 28 June 1993, the United States Supreme Court granted plaintiffs' petition for writ of certiorari, vacated our decisions in *Swanson I* and *Swanson II*, and remanded the case for further consideration in light of its holding in *Harper v. Virginia Department of Taxation*, 509 U.S. ---, 125 L. Ed. 2d 74 (1993), that *Davis* must be applied retroactively. *Swanson v. North Carolina*, --- U.S. ---, 125 L. Ed. 2d 713 (1993).

Plaintiffs moved this Court to remand the case to superior court "for implementation of orders previously entered," or, alternatively, for additional briefing and argument on the meaning and effect of *Harper*. On 29 July 1993, the Court denied plaintiffs' motion for remand, granted plaintiffs' alternative motion and directed the parties to file additional briefs on the remaining issues pending before this Court and any other issues raised by *Harper*.

I.

[1] Plaintiffs contend they are entitled to full refunds for income taxes paid by them on pension benefits for the tax years 1985 through 1988 pursuant to North Carolina's taxation statutes held

SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

unconstitutional in *Davis*. We conclude plaintiffs are procedurally barred from recovering in this action the refunds sought because they did not comply with the State's statutory postpayment refund demand procedure.

The sole procedure by which a North Carolina taxpayer may challenge the legality of any tax is as follows:

> No court of this State shall entertain a suit of any kind brought for the purpose of preventing the collection of any tax imposed in this Subchapter. Whenever a person shall have a valid defense to the enforcement of the collection of a tax assessed or charged against him or his property, such person shall pay such tax to the proper officer, and such payment shall be without prejudice to any defense of rights he may have in the premises. *At any time within 30 days after payment, the taxpayer may demand a refund of the tax paid in writing from the Secretary of Revenue* and if the same shall not be refunded within 90 days thereafter, may sue the Secretary of Revenue in the courts of the State for the amount so demanded. Such suit may be brought in the Superior Court of Wake County, or in the county in which the taxpayer resides at any time within the three years after the expiration of the 90-day period allowed for making the refund. If upon the trial it shall be determined that such a tax or any part thereof was levied or assessed for an illegal or unauthorized purpose, or was for any reason invalid or excessive, judgment shall be rendered therefor, with interest, and the same shall be collected as in other cases. The amount of taxes for which judgment shall be rendered in such action shall be refunded by the State; provided, nothing in this section shall be construed to conflict with or supersede the provisions of G.S. 105-241.2.

N.C.G.S. § 105-267 (emphasis added).

In *Bailey v. North Carolina*, 330 N.C. 227, 412 S.E.2d 295 (1991), *cert. denied*, --- U.S. ---, 118 L. Ed. 2d 547 (1992), this Court held that "[w]hen a tax is challenged as unlawful rather than excessive or incorrect, the appropriate remedy is to bring suit under N.C.G.S. § 105-267." *Id.* at 235, 412 S.E.2d at 300. That the challenge is to the constitutionality of the tax does not exempt a taxpayer from following the statute's mandatory procedure. *Id.* Failure to comply with the requirements in section 105-267 bars

SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

a taxpayer's action against the State for a refund of taxes. *Id.* at 236, 412 S.E.2d at 301.

The plaintiffs in *Bailey*, state and local government employees whose retirement benefits had vested, brought suit against the State, claiming it had violated assurances that their benefits would be exempt from state income tax. We held that "[i]nsofar as plaintiffs' complaint seeks a refund of 1989 taxes paid, it should have been dismissed for failure of plaintiffs to satisfy conditions precedent to such an action as required by N.C.G.S. § 105-267." *Id.* at 234, 412 S.E.2d at 300. We said:

> A taxpayer with "a valid defense to the enforcement of the collection of a tax" must first pay the tax, then demand a refund of that tax in writing within thirty days after payment. Only when the Secretary of Revenue fails to refund the tax within ninety days may the taxpayer sue the Secretary of Revenue for the amount demanded. Absent protest in the form of a demand for refund, a tax is voluntarily paid, and "voluntary payments of unconstitutional taxes are not refundable." *Coca-Cola Co. v. Coble*, 293 N.C. [565,] 569, 238 S.E.2d [780,] 783. The right to sue is a conditional right; the terms prescribed are conditions precedent to the institution of the action. Plaintiffs must allege and prove they demanded a refund within thirty days after payment. Failure to do so forfeits the right to sue. *Kirkpatrick v. Currin, Comr. of Revenue*, 250 N.C. [213,] 216, 108 S.E.2d [209,] 211; *Stenhouse v. Lynch*, 37 N.C. App. 280, 281, 245 S.E.2d 830, 831 (1978).

*Id.* at 236, 412 S.E.2d at 301. The purpose for this statutory protest requirement is that,

> [w]here protest has been interposed, the [taxing authority] is notified that it may be obliged to refund the taxes and is required to be prepared to meet that contingency. If no protest has been lodged, it is generally assumed that taxes paid can be retained to meet authorized public expenditures, and financial provision is not made for contingent refunds.

*Id.* at 238, 412 S.E.2d at 302 (quoting *Conklin v. Town of Southampton*, 141 A.D.2d 596, 598, 529 N.Y.S.2d 517, 519 (1988) (quoting *Mercury Mach. Importing Corp. v. City of New York*, 3 N.Y.2d 418, 426, 144 N.E.2d 400, 404, 165 N.Y.S.2d 517, 521 (1957) ).

SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

In *Bailey* all demand letters sent to the Secretary of Revenue were preceded by the plaintiffs' complaint. *Id.* at 237, 412 S.E.2d at 301. The Court held the plaintiffs' "demands for refunds followed neither the letter of the statute nor the reasonable criteria required by the Secretary of Revenue and were properly rejected and deemed invalid for purposes of suing for refunds under N.C.G.S. § 105-267." *Id.* at 238-39, 412 S.E.2d at 302.

Here plaintiffs sent a "class demand letter" on 14 April 1989 to Helen A. Powers, Secretary of the North Carolina Department of Revenue, requesting refund of all income taxes paid on pension benefits for tax years 1985 to 1989. A second class demand letter was sent to Secretary Powers on 18 April 1989. On 11 July 1989 Secretary Powers responded to plaintiffs' letters of demand as follows:

In order to constitute a valid demand for refund under G.S. 105-267, a taxpayer's request must include sufficient information to permit the Department to determine whether a refund may be made and, if so, in what amount. Such information would normally consist of the taxpayer's name and social security number, the year for which the tax was paid, the date on which the return was filed or the tax was paid, and the amount of federal retirement income received by the taxpayer during the year.

To the extent that your letters furnish information concerning the named taxpayers sufficient to determine the amount of tax which they paid with respect to the federal retirement income for each year in question, the Department will, pursuant to G.S. 105-267, issue refunds for any such tax paid by those persons within the thirty days preceding the date of your letter.

To the extent that your letter makes demand for refund of taxes paid by unnamed persons or by named persons not sufficiently identified to permit a determination as to their liability, your letter will not be considered a valid demand for refund, and no refunds will be issued.[1]

---

1. As of 19 February 1990 the State, presumably pursuant to this letter, had refunded $9,145,523.92 to 12,404 taxpayers in plaintiff classes who timely filed refund requests pursuant to section 105-267. The State denied approximately $8,000,000 of refunds for 1988 taxes paid by taxpayers in plaintiff classes.

### SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

Plaintiffs filed this suit against Secretary Powers in her official capacity and individually on 16 March 1990 seeking refund of income taxes paid on pension benefits from 1985 to 1989. Thereafter, on 12 April 1990 plaintiffs sent a similar third class demand letter to Secretary Powers. Secretary Powers responded to plaintiffs' third demand letter by stating,

> Your letter does not identify any individual taxpayer, nor does it furnish information sufficient to determine the amount of tax which any taxpayer paid with respect to federal military or retirement income for any of the taxable years in question. Accordingly, your letter will not be considered a valid demand for refund, and no refunds will be issued.

The three class demand letters filed by plaintiffs were invalid protests and, as such, did not satisfy the requirements of section 105-267. "N.C.G.S. § 105-267 does not expressly prohibit taxpayers from seeking refunds as a class"; however, "it includes no provision for a tax refund demand to be made either by taxpayers as a class or as represented by others." *Id.* at 237, 412 S.E.2d at 301. "Even when taxpayers are seeking a tax refund as a class, the requisites of N.C.G.S. § 105-267 must be met." *Id.* (footnote omitted). Plaintiffs' action "cannot be maintained unless preceded by an individual notice, protest or demand." *Id.* at 239 n.4, 412 S.E.2d at 302 n.4. "[A]bsent specific statutory authorization for class or representative tax refund demands, such [class] demands are ineffectual to satisfy this condition precedent to legal action for a tax refund under N.C.G.S. § 105-267." *Id.* at 240, 412 S.E.2d at 303.[2]

The only demands for tax refunds alleged or proved in this action are the class demand letters which we described above. Since these class demand letters do not constitute refund demands as required by section 105-267, this necessary prerequisite to filing this action against the State for the refunds claimed has not been met. The action therefore must be dismissed, provided these procedures comport with constitutional due process, a question we now address.

---

2. Plaintiffs contend section 105-267 unconstitutionally denies them the right to bring a class action suit. We disagree. Once taxpayers have individually met the requirements of section 105-267, they are free to pursue their claim as a class.

SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

## II.

[2] Plaintiffs contend the statutory refund procedure transgresses the Due Process Clause of the Fourteenth Amendment of the United States Constitution insofar as it bars full refunds to plaintiffs for tax years 1985 through 1988 which, plaintiffs contend, are required by the United States Supreme Court's decision in *Harper v. Virginia Department of Taxation*, 509 U.S. ---, 125 L. Ed. 2d 74.

We do not agree. Rather, we conclude that in light of both *Harper* and *McKesson Corporation v. Division of Alcoholic Beverage and Tobacco*, 496 U.S. 18, 110 L. Ed. 2d 17 (1990), the refund procedure provided in section 105-267 is free from any constitutional infirmity. It may, therefore, effectively bar actions for refunds in the tax years for which the procedure was not followed.

Admittedly, this statute does not permit North Carolina taxpayers to challenge the legality, or constitutionality, of a tax before paying the tax. It does not, in other words, provide for a predeprivation remedy for the taxpayer. Instead it requires the taxpayer first to pay the tax sought to be challenged; second, to demand within 30 days of payment that the tax be refunded; and third, if the State refuses within 90 days to make the refund, the taxpayer must bring suit against the State for the refund within three years of the expiration of the 90-day period. As we have shown above, the timely demand for refund is a prerequisite for bringing suit against the State to recover the challenged tax.

We are convinced this procedure comports with due process under the United States Supreme Court's jurisprudence on the subject as it relates to taxation. That Court has long held that postdeprivation remedies in the area of taxation can comport with due process. *Cheatham v. United States*, 92 U.S. 85, 89-90, 23 L. Ed. 561, 562-63 (1875) (government has right to prescribe conditions on which it will subject itself to judgment of the courts in collection of revenues); *Dodge v. Osborn*, 240 U.S. 118, 122, 60 L. Ed. 557, 560 (1916) (requirement that taxes be paid and administrative procedures exhausted before suit for recovery could be filed does not violate due process); *Bob Jones University v. Simon*, 416 U.S. 725, 747, 40 L. Ed. 2d 496, 515 (1974) (congressional restriction to postenforcement review of an organization claiming tax-exempt status is not constitutionally infirm in light of the powerful government interests in protecting the administration of the tax system from premature judicial interference).

## SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

The principle that due process does not require predeprivation remedies in the area of taxation was most recently reaffirmed in *McKesson*, 496 U.S. 18, 110 L. Ed. 2d 17. The *McKesson* Court held postdeprivation remedies for tax refunds are sufficient to meet due process standards provided taxpayers are afforded meaningful backward-looking relief for taxes paid under a tax scheme subsequently found to be unconstitutional. *McKesson*, 496 U.S. at 22, 110 L. Ed. 2d at 27.

In *McKesson*, the petitioner challenged a Florida tax scheme which afforded special rate reductions for certain specified citrus, grape, and sugarcane products, all of which are commonly grown in Florida and used in alcoholic beverages produced in the state. The petitioner, a wholesale distributor of alcoholic beverages whose products did not qualify for the rate reduction, followed the statutory procedure for repayment or refund of taxes by paying the applicable taxes each month and then seeking a refund from the Florida Office of the Comptroller on the ground that the tax scheme unlawfully provided preferences for distributors of certain local products. Upon denial of its refund request, petitioner brought suit in a Florida trial court against the comptroller and the Florida Division of Alcoholic Beverages. The petitioner's suit challenged the constitutionality of the tax under both the Federal Constitution's Commerce Clause and other federal and state constitutional provisions. The petitioner requested declaratory and injunctive relief, and sought a refund of the excess taxes it had paid because of the tax scheme's discriminatory treatment. The trial court enjoined the state from giving effect to the preferences in the future, but refused to provide a refund or any other relief to the petitioner for taxes it had already paid.

In affirming the trial court's order, the Florida Supreme Court held that while the preferential rate reductions should be given no future operative effect, the petitioner was not entitled to a refund of previously paid taxes. The court reasoned that the Division of Alcoholic Beverages and Tobacco had relied in good faith on a presumptively valid statute. Additionally the petitioner, if given a refund, would most likely receive a windfall, since the cost of the tax likely had been passed on to its customers.

The United States Supreme Court reversed, holding that postdeprivation remedies for unlawful taxes do not meet due process standards if a taxpayer who has paid the illegal tax meets

the statutory requirements for a remedy, but is limited to prospective relief. *Id.* at 31, 110 L. Ed. 2d at 32. The Court held:

> If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge that tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.
>
> . . . .
>
> Florida requires taxpayers to raise their objections to the tax in a postdeprivation refund action. To satisfy the requirements of the Due Process Clause, therefore, in this refund action the State must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a clear and certain remedy.

*Id.* at 38-39, 110 L. Ed. 2d at 37.

*McKesson* was a troubling case because Florida did not provide a full refund of the challenged tax even after the taxpayer complied with all of the procedural requirements for challenging the tax later determined to be unconstitutional. *McKesson* makes abundantly clear, as do the cases it cites, that a full refund of the challenged tax is all that due process requires provided that a fair opportunity to contest the tax is given. The Court said:

> The State may, of course, choose to erase the property deprivation itself by providing petitioner with a full refund of the tax payments.
>
> . . . .
>
> In the end, the State's postdeprivation procedure would provide petitioner with all of the process it is due: an opportunity to contest the validity of the tax and a "clear and certain remedy" designed to render the opportunity meaningful by preventing any permanent unlawful deprivation of property.

*Id.* at 39-40, 110 L. Ed. 2d at 38. There can, of course, be no clearer or more certain remedy nor more meaningful backward-looking relief than a full refund of the challenged tax.

Plaintiffs contend, nevertheless, that the State cannot, consistent with due process, deprive them of full refunds of all taxes

SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

paid in all tax years within the period of the statute of limitations even though these taxes were not duly challenged under the procedures established by section 105-267. Again, *McKesson* answers this contention adversely to plaintiffs' position.

*McKesson* holds that a state may provide full refunds to taxpayers, and at the same time, protect its fiscal stability by imposing "various procedural requirements on actions" seeking such refunds:

> The State might, for example, provide by statute that refunds will be available only to those taxpayers paying under protest or providing some timely notice of complaint; execute any refunds on a reasonable installment basis; enforce relatively short statutes of limitations applicable to such action . . . . The State's ability in the future to invoke such procedural protections suffices to secure the State's interest in stable fiscal planning when weighed against its constitutional obligation to provide relief for an unlawful tax.

*Id.* at 45, 110 L. Ed. 2d at 41. Indeed, in remanding the case to the Florida Supreme Court, the United States Supreme. Court noted, "upon remand the State may invoke as an independent basis for refusing to provide a refund, petitioner's failure to comply with a notice requirement that was in effect at the time of petitioner's tax payments." *Id.* at 24 n.4, 110 L. Ed. 2d at 28 n.4.

North Carolina thus gives taxpayers desiring to challenge the illegality, or unconstitutionality, of a tax a clear and certain remedy and meaningful, backward-looking relief by providing a full refund of the tax if the challenge is successful. It also provides a clear and fair opportunity to contest the tax by the procedures set out in section 105-267. Denial of refunds to taxpayers for the tax years for which they failed to comply with this procedure does not, as the Court made clear in *McKesson*, deprive these taxpayers of constitutional due process.[3]

---

3. A "state is free, of course, to provide broader relief as a matter of state law than is required by the Federal Constitution." *McKesson*, 496 U.S. at 52 n.36, 110 L. Ed. 2d at 45 n.36. The North Carolina General Assembly has chosen to do this by enacting N.C.G.S. § 105-151.20, which provides:

> A taxpayer who received government retirement benefits during the 1988 tax year may claim a credit against the tax imposed by this Division equal to the amount by which the tax under this Division paid by the taxpayer for the 1988 tax year would have been reduced if none of the taxpayer's government retirement benefits had been included in the taxpayer's taxable

### SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

Other jurisdictions, reviewing taxpayers' eligibility for refunds of taxes paid pursuant to a statute subsequently pronounced unconstitutional, have applied the due process principles articulated in *McKesson* and, in several cases, have awarded or denied refunds to taxpayers on the basis of their compliance with state procedural refund requirements. *Jenkins v. Missouri*, 962 F.2d 762 (8th. Cir. 1992) (refund of unlawfully levied tax limited to those taxpayers who paid under protest), *cert. denied*, --- U.S. ---, 121 L. Ed. 2d 242 (1992); *Farrar v. Franchise Tax Board*, 15 Cal. App. 4th 10, 18 Cal. Rptr. 2d 611 (1993) (failure to provide timely notice of class claim warranted dismissal of claim for refunds), *cert. denied*, --- U.S. ---, --- L. Ed. 2d ---, 62 USLW 3449, 62 USLW 3451 (Jan. 10, 1994); *Hagge v. Iowa Department of Revenue and Finance*, 504 N.W.2d 448 (Iowa 1993) (refund awarded to taxpayers who timely filed amended returns within the limitation period); *Ragsdale v. Department of Revenue*, 312 Or. 529, 823 P.2d 971 (1992) (statutes requiring taxpayer to file legal action before becoming eligible for refunds and denying taxpayer refunds for taxes collected prior to the filing of the action was a reasonable procedural barrier).

Plaintiffs contend that by its later decision in *Harper*, the United States Supreme Court somehow altered *McKesson*. Their argument seems to be that *Harper*, if not *McKesson*, requires a refund of the taxes paid in all tax years within the period of the statute of limitation even though the taxpayers failed to comply with the statutory procedures for challenging the tax for those years. We disagree. In our view, insofar as *Harper* addressed due process concerns with regard to statutes providing relief from unconstitutional taxes, it reaffirmed what was held and said in *McKesson*.

---

income. If a taxpayer received a refund of any tax paid under this Division on government retirement benefits for the 1988 tax year, the amount of the refund reduces the amount of the credit allowed under this section. . . .

The credits allowed under this section shall be taken in equal installments over the taxpayer's first three taxable years beginning on or after January 1, 1990. The credit allowed under this section may not exceed the amount of tax imposed by this Division reduced by the sum of all credits allowed against the tax except payments of the tax made by or on behalf of the taxpayer.

N.C.G.S. § 105-151.20 (1992). Thus federal retirees who were ineligible for tax refunds because of failure to comply with protest requirements were entitled to relief for the 1988 tax year in the form of tax credits.

The issue in *Harper* was whether the Virginia Supreme Court had erred in not giving retroactive effect to *Davis*. The United States Supreme Court concluded that it had. *Harper* involved an action for refund of taxes unlawfully assessed for the years 1985 to 1988 in violation of *Davis*. In response to *Davis*, Virginia had repealed its exemption from state income taxation for state and local government employees. It also enacted a statute under which taxpayers could seek a refund of state taxes imposed on federal retirement benefits in the years 1985, 1986, 1987 and 1988 for up to one year from the date of the final determination as to whether Virginia must refund these taxes.

The petitioners in *Harper*, 421 federal civil service and military retirees in Virginia, sought refunds of the taxes improperly or erroneously assessed. The trial court denied the refunds on the ground that the *Davis* decision was to be applied prospectively. The Supreme Court of Virginia affirmed, concluding that because *Davis* was to be applied prospectively, the pre-*Davis* assessments were not improper under Virginia's tax refund statute.

The United States Supreme Court vacated the Virginia Supreme Court's decision and remanded the case in light of the Court's decision in *James B. Beam Distilling Co. v. Georgia*, 501 U.S. ---, 115 L. Ed. 2d 481 (1991), which held that an earlier decision invalidating excise taxes on alcoholic beverages was retroactively applicable to claims arising from facts predating the earlier decision. On remand, the Supreme Court of Virginia affirmed its prior decision in all respects on the ground that the issue of retroactivity was not decided in *Davis* because Michigan had not contested plaintiff's entitlement to a refund.

Reversing the Virginia Supreme Court, the United States Supreme Court held that *Davis* was to be applied retroactively. The Court noted, however, that retroactive application of *Davis* did not necessarily entitle the petitioners to a refund. Rather, Virginia was only required to provide relief consistent with federal due process. *Harper*, 509 U.S. at ---, 125 L. Ed. 2d at 88. The *Harper* Court did not fashion a new test for due process. Instead, it relied on well-established tests enunciated in *McKesson* and earlier cases. The Court said:

> Because we have decided that *Davis* applies retroactively to the tax years at issue in petitioners' refund action, we reverse the judgment below. We do not enter judgment for petitioners, however, because federal law does not necessarily

entitle them to a refund. Rather, the Constitution requires Virginia "to provide relief consistent with federal due process principles." *American Trucking*, 496 U.S. at 181, 110 L. Ed. 2d 148, 110 S.Ct. 2323 (plurality opinion). Under the Due Process Clause, U.S. Const., Amdt. 14, § 1, "a State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination." *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 39-40, 110 L. Ed. 2d 17, 110 S.Ct. 2238 (1990). If Virginia "offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing," the "availability of a predeprivation hearing constitutes a procedural safeguard . . . sufficient by itself to satisfy the Due Process Clause." *Id.* at 38, n.21, 110 L. Ed. 2d 17, 110 S.Ct. 2238. On the other hand, if no such predeprivation remedy exists, "the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *Id.* at 31, 110 L. Ed. 2d 17, 110 S.Ct. 2238 (footnotes omitted). In providing such relief, a State may either award full refunds to those burdened by an unlawful tax or issue some other order that "create[s] in hindsight a nondiscriminatory scheme." *Id.* at 40, 110 L. Ed. 2d 17, 110 S.Ct. 2238. *Cf. Davis*, 489 U.S. at 818, 103 L. Ed. 2d 891, 109 S.Ct. 1500 (suggesting that a State's failure to respect intergovernmental tax immunity could be cured "either by extending [a discriminatory] tax exemption to retired federal employees . . . or by eliminating the exemption for retired state and local government employees").

*Id.* at ---, 125 L. Ed. 2d at 88-89.

The *Harper* Court also noted that were Virginia to have provided an adequate predeprivation remedy, that is, a "meaningful opportunity for taxpayers to withhold contested tax assessments and challenge their validity in a predeprivation hearing," due process would be satisfied. *Id.* at ---, 125 L. Ed. 2d at 89 (quoting *McKesson*, 496 U.S. at 38, 110 L. Ed. 2d at 37). Where no such predeprivation remedy exists, "the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *Id.* (quoting *McKesson*, 496 U.S. at 31, 110 L. Ed. 2d at 32).

## SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

In its brief before the Supreme Court the State of Virginia argued that "[t]axpayers in Virginia are entitled to challenge a tax assessment in a prepayment procedure set forth in §§ 58.1-1821 and 58.1-1822 of the Virginia Code." Brief for Respondent at 47, *Harper v. Virginia Department of Taxation*, 509 U.S. ---, 125 L. Ed. 2d 74 (1993). Thus, Virginia contended petitioners "had a clear, meaningful, prepayment opportunity to challenge the validity of the tax of which they now complain." *Id.* The sufficiency of this predeprivation procedure had not been reviewed by the Virginia Supreme Court. The United States Supreme Court held:

> The constitutional sufficiency of any remedy thus turns (at least initially) on whether Virginia law "provide[s] a[n] [adequate] form of 'predeprivation process,' for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding." *McKesson*, 496 U.S. at 36-37, 110 L. Ed. 2d 17, 110 S.Ct. 2238. Because this issue has not been properly presented, we leave to Virginia courts this question of state law and the performance of other tasks pertaining to the crafting of any appropriate remedy. Virginia "is free to choose which form of relief it will provide, so long as that relief satisfies the minimum federal requirements we have outlined." *Id.* at 51-52, 110 L. Ed. 2d 17, 110 S.Ct. 2238.

*Harper*, 509 U.S. at ---, 125 L. Ed. 2d at 89. The constitutionality of a postdeprivation remedy, such as that afforded in North Carolina, was not before the Court in *Harper*. The Court chose to comment on, but did not decide, whether Virginia's predeprivation remedy satisfied due process.

Thus, *Harper* did not modify the Court's previous jurisprudence, including *McKesson*, regarding the tests for determining whether a state's postdeprivation remedy by which a tax may be challenged on legal or constitutional grounds satisfies due process. Rather, the *Harper* Court made it clear that a state satisfied due process if it offered taxpayers relief consistent with the due process standards delineated in *McKesson*.

### III.

[3] We next turn to plaintiffs' argument that any defenses by the State under section 105-267 to plaintiffs' federal challenges have been settled by *res judicata* and collateral estoppel. The basis

of plaintiffs' argument is the denial of the State's motion to dismiss based on the Tax Injunction Act, 28 U.S.C. § 1341, in the companion case brought by plaintiffs in the United States District Court for the Eastern District of North Carolina, Raleigh Division. *Swanson v. Powers* (E.D.N.C. 1990) (No. 89-282-CIV-5-H). We find no merit in this argument because there has been no final adjudication of the federal case.

Under *res judicata*,

a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them. When the plaintiff prevails, his cause of action is said to have "merged" with the judgment; where defendant prevails, the judgment "bars" the plaintiff from further litigation. In either situation, all matters, either fact or law, that were or should have been adjudicated in the prior action are deemed concluded. See Restatement (Second) of Judgments 18, 19 (1982); 1B Moore's Federal Practice 405[1] at 181-85 (2d ed. 1984).

*Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556-57 (1986). For *res judicata* to apply, a party must show that a "previous suit has resulted in final judgment on the merits, that the same cause of action is involved, and that [plaintiffs] and [the State] were either parties or stand in privity with parties." *Id.* at 429, 349 S.E.2d at 557. Similarly,

[u]nder collateral estoppel as traditionally applied, a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies. *See* Restatement (Second) of Judgments § 27 (1982); 1B Moore's Federal Practice 0.441[1] at 718 (2d ed. 1984).

*Id.* (footnote omitted). Thus, collateral estoppel, like *res judicata*, only occurs "when there has been a final judgment or decree." *King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E.2d 799, 805 (1973).

In the federal case, by an order dated 26 October 1993, United States District Judge Malcom H. Howard found that "a final judgment has not been issued in this case and . . . this court has never ordered that this case be closed"; and Judge Howard ruled "the court hereby puts all parties on notice that this case is not closed and the court stands ready to hear any and all matters

## SWANSON v. STATE OF NORTH CAROLINA

[335 N.C. 674 (1994)]

that properly come before it." *Swanson v. Powers* (E.D.N.C. 1990) (No. 89-282-CIV-5-H). Because the requisite element of a final judgment is lacking, neither *res judicata* nor collateral estoppel based on the federal litigation apply.

For the foregoing reasons, the decision of the superior court granting summary judgment in favor of plaintiffs is reversed. The case is remanded for entry of judgment for defendants dismissing the action.

Reversed and remanded.

Justice MITCHELL dissenting.

Neither the defendants nor the majority of this Court dispute the fact that the defendants have unlawfully collected taxes from the plaintiffs through the application of an unconstitutionally discriminatory tax. The issue is whether the defendants must return the money they have unlawfully taken from the taxpayer-plaintiffs, or may keep that money because the plaintiffs have not sought to recover it in strict accordance with the requirements set forth in N.C.G.S. § 105-267. I believe that under the particular facts presented by this case, the plaintiffs have been denied due process of law. Therefore, I must dissent from the opinion of the majority which holds to the contrary and denies relief to the taxpayer-plaintiffs.

At the outset, I take exception to the apparent view of the majority that by failing to comply with the procedural prerequisites of N.C.G.S. § 105-267, the plaintiffs somehow voluntarily paid the unconstitutional taxes in question. When, as here, a tax is paid to avoid financial sanctions or a seizure of real or personal property, the tax is paid under duress. *McKesson v. Division of Alc. Bev.*, 496 U.S. 18, 39 n.21, 110 L. Ed. 2d 17, 37 n.21 (1990).

> In contrast, if a State chooses not to secure payments under duress and instead offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing, payments tendered may be deemed "voluntary." The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivation sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure.

*Id.* As the opinion of the majority concedes, North Carolina law did not provide the plaintiffs with any form of predeprivation remedy. Therefore, they may not be denied recovery on the basis of any ruling grounded in the notion that they have somehow voluntarily paid the unconstitutional taxes in question, thereby rendering those unlawfully collected taxes nonrefundable.

When, as here, the State places

a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.

*Id.* at 31, 110 L. Ed. 2d at 32 (footnotes omitted). "In providing such relief, a State may either award full refunds to those burdened by an unlawful tax or issue some other order that 'create[s] in hindsight a nondiscriminatory scheme.' " *Harper v. Virginia Dept. of Taxation,* 509 U.S. ---, 125 L. Ed. 2d 74, 89 (1993) (quoting *McKesson,* 496 U.S. at 40, 110 L. Ed. 2d at 38). Any such postdeprivation procedure provides all of the process due, if it provides "an opportunity to contest the validity of the tax and a 'clear and certain remedy' designed to render the opportunity meaningful by preventing any permanent unlawful deprivation of property." *McKesson,* 496 U.S. at 40, 110 L. Ed. 2d at 38. I am convinced under the facts presented by the present case, however, that N.C.G.S. § 105-267 does not provide these plaintiffs the type of meaningful backward-looking relief required by the Due Process Clause.

The opinion of the majority concludes that the taxpayer-plaintiffs were required under N.C.G.S. § 105-267 to make a postdeprivation demand upon the administrative functionaries responsible for collecting the taxes in question and then wait the required period of time thereafter before initiating any court action seeking to recover money taken from them unlawfully pursuant to an unconstitutional tax. However, courts have uniformly held that plaintiffs will not be required to exhaust administrative remedies before bringing suit, where pursuing such administrative remedies would be futile. Pursuing an administrative remedy is "futile" when it is useless to do so either as a legal or practical matter.. *See Honig v. Doe,* 484 U.S. 305, 327, 98 L. Ed. 2d 686, 709 (1988). For me, this clearly is a case in which it would have been futile for the

plaintiffs to exhaust their administrative remedies under N.C.G.S. § 105-267 before seeking relief in the courts.

In the present case, neither of the State functionaries who have been made defendants in this case—the Secretary of Revenue and the State Treasurer—have or have ever had the authority to grant the relief sought by the taxpayer-plaintiffs. Those defendants, who have administrative responsibilities with regard to the tax at issue, did not and do not have the power to pass upon the constitutionality of that tax, since decisions as to the constitutionality of tax statutes are *exclusively* for the judiciary. *Bailey v. State of North Carolina*, 330 N.C. 227, 246, 412 S.E.2d 295, 306 (1991), *cert. denied*, --- U.S. ---, 118 L. Ed. 2d 547 (1992). Thus, it is clear beyond question that the conclusion of the majority requiring these taxpayers to "jump through the procedural hoops adopted and applied by the State bureaucracy under N.C.G.S. § 105-267" amounts to a holding that they were entitled to relief only if they did an utterly vain and useless act. *Bailey*, 330 N.C. at 248-49, 412 S.E.2d at 308 (Mitchell, J., dissenting). That being the case, I reject the majority's view that the statute provides meaningful backward-looking relief of the sort which is adequate to satisfy minimum due process requirements. *See id.; Reich v. Collins*, 437 S.E.2d 320, 322-25 (Ga. 1993) (Carley, J., joined by Sears-Collins, J., dissenting). Therefore, I also reject the majority's conclusion that the defendants are entitled to the entry of a judgment dismissing the taxpayers' action against them.

Under the opinion of the majority, these taxpayer-plaintiffs would be entitled to a refund only if they had foreseen at an early stage that the tax in question was unconstitutional—foresight which would have exceeded that of the legislature, the defendants who are experts in such matters, and this Court. *See Swanson v. State of North Carolina*, 329 N.C. 576, 407 S.E.2d 791 (1991), *vacated and remanded*, --- U.S. ---, 125 L. Ed. 2d 713 (1993) (in which a majority of this Court held that these plaintiffs were not entitled to refunds of the taxes in question because the decision of the Supreme Court of the United States in *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 103 L. Ed. 2d 891 (1989), declaring taxes such as that at issue here unconstitutional, did not apply retroactively). I am completely aware that a concern for the ability of taxing entities such as the various states and local governments to engage in sound fiscal planning has led to the adoption of rules which are heavily weighted against the taxpayers and in favor

of the taxing entity in cases such as this. I believe, however, that the opinion of the majority in the present case goes well beyond any legitimate need supporting such concerns and upholds a sham procedure for postdeprivation relief which was futile from the outset in this case. Surely, this unseemly result may only be properly characterized as tilting the scales too far in favor of the taxing entity and denying these taxpayers fundamental due process.

For the foregoing reasons, I believe that the taxpayer-plaintiffs have been denied due process of law by the majority's interpretation and application of N.C.G.S. § 105-267. Therefore, I respectfully dissent.

Justice Parker joins in this dissenting opinion.