Arlo H. HAGGE, Appellee,

v.

**IOWA DEPARTMENT OF REVENUE AND FINANCE, Appellant.**

No. 92–1377.

Supreme Court of Iowa.

July 21, 1993.

As Amended on Denial of Rehearing Aug. 24, 1993.

Bonnie J. Campbell, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Marcia Mason, Asst. Atty. Gen., for appellant.

Gary J. Streit and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee.

NEUMAN, Justice.

This appeal concerns the remedy available to taxpayers aggrieved by Iowa's former income tax scheme which taxed federal government employees' pensions but not those of state employees. Reversing a department of revenue decision, the district court on judicial review ordered refunds on timely-filed amended returns. We affirm

but modify the judgment to permit installment payments.

I. *Background.* In *Davis v. Michigan Department of Treasury,* 489 U.S. 803, 817, 109 S.Ct. 1500, 1508–09, 103 L.Ed.2d 891, 906 (1989), the United States Supreme Court held that states like Iowa could not lawfully impose taxes on the pensions of retired federal employees so long as state employees' retirement benefits were exempt. The practice, it held, violated the constitutional doctrine of intergovernmental tax immunity. *Id.,* 489 U.S. at 816–18, 109 S.Ct. at 1508–09, 103 L.Ed.2d at 906. Left unclear was the question whether *Davis*'s mandate would operate retroactively, thereby compelling states to refund income taxes already collected. *See id.,* 489 U.S. at 817, 109 S.Ct. at 1509, 103 L.Ed.2d at 906 (state conceded propriety of refund under these circumstances; Court stated "to the extent appellant has paid taxes pursuant to this invalid tax scheme, he is entitled to a refund").

Plaintiff Arlo Hagge, a former United States government employee who retired in 1969, responded to *Davis* by timely filing amended returns for 1985–1988, claiming a refund of state income taxes he paid in those years. The Iowa Department of Revenue (department) denied Hagge's request for refund, asserting its view that *Davis* would not be applied retroactively. It also maintained that repeal of the offending tax scheme offered prospective relief that obviated the need to refund taxes "voluntarily" paid before the statute was invalidated.

Hagge protested the department's decision and the case was submitted directly to Gerald Bair, director of revenue and finance, on a stipulated factual record. That record recited not only Hagge's claimed refund for Iowa income taxes paid during the years in question ($10,137.65) but the state's estimated refund liability to other Iowa federal employees were *Davis* applied retroactively ($40 to $45 million). Applying the three-prong test for retroactivity announced in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971), the director determined that, under this record, the equities favored prospective rather than retroactive application of *Davis.* Hagge was thus denied the refund he sought.

Hagge petitioned for judicial review in the district court in accordance with Iowa Code section 17A.19 (1989). The district court, noting that judicial decisions generally operate both retroactively and prospectively, reversed the director's decision. This appeal by the department of revenue followed.

The department raises three issues on appeal. It argues that (1) *Davis* should be applied prospectively only; (2) refunding taxes collected on pre–*Davis* federal pension income would be inequitable to the state and its taxpayers and, hence, an inappropriate remedy; and (3) federal retirees are not entitled to refunds based on Iowa Code section 422.73(2).[1] We shall consider these arguments in turn.

■ II. *Retroactivity.* Since the submission of this appeal, the Supreme Court has decided the retroactivity question adverse to the department. In *Harper v. Virginia Department of Taxation,* —— U.S. ——, ——, 113 S.Ct. 2510, 2518, 125 L.Ed.2d 74, 87 (1993), the Supreme Court reversed the Virginia Supreme Court's refusal to apply *Davis* retroactively. Casting serious doubt on the vitality of *Chevron*'s retroactivity analysis, the Court announced the following rule:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. This rule extends *Griffith*'s ban against "selective application of new rules." Mindful of the "basic norms of constitutional adjudication" that animated our view of retro-

---

1. The statute provides in pertinent part:
   If it appears that an amount of tax, penalty or interest has been paid which was not due ...

[then] that amount shall be refunded to the person [or credited to tax that may become due].

activity in the criminal context, we now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases. In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to "the particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule.

*Id.* at ——, 113 S.Ct. at 2512, 125 L.Ed.2d at 80 (citations omitted). The Court further rejected Virginia's attempt to assert its own doctrine of retroactivity, stating that under the Supremacy Clause of the United States Constitution, "[w]hatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law, cannot extend to their interpretations of federal law." *Id.* at ——, 113 S.Ct. at 2519, 125 L.Ed.2d at 88 (citations omitted).

*Harper* controls our decision on the retroactivity issue, leaving the department no basis to challenge the district court's ruling on this aspect of the case.

■ **III.** *Remedy.* While the *Harper* Court decided that *Davis* must be applied retroactively to the tax years at issue in Harper's refund action, the Court stopped short of entering judgment for the petitioners. Instead it observed that the Constitution requires only that states provide relief "consistent with federal due process principles." *Harper*, —— U.S. at ——, 113 S.Ct. at 2519, 125 L.Ed.2d at 88. Citing *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), the Court summarized the test for procedural sufficiency this way:

If Virginia "offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing," the "availability of a predeprivation hearing constitutes a procedural safeguard ... sufficient by itself to satisfy the Due Process Clause." On the other hand, if no such predeprivation remedy exists, "the Due Process Clause of the Four-

teenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." In providing such relief, a State may either award full refunds to those burdened by an unlawful tax or issue some other order that "create[s] in hindsight a nondiscriminatory scheme."

*Harper*, —— U.S. at ——, 113 S.Ct. at 2519, 125 L.Ed.2d at 89 (citations omitted). The Court then amplified its analysis by suggesting that adequate "predeprivation process" would be satisfied if a state "authoriz[ed] taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding." *Id.*, —— U.S. ——, 113 S.Ct. at 2520, 125 L.Ed.2d at 89 (quoting *McKesson*, 496 U.S. at 36–37, 110 S.Ct. at 2250, 110 L.Ed.2d at 36).

In the case before us, the district court found that Hagge had no "real" predeprivation remedy. The record reveals that for at least a decade before this action arose, Hagge regularly voiced his dissatisfaction with this discriminatory tax scheme to legislators and tax officials alike. The court observed, however, that Hagge was effectively limited to this letter writing campaign because "failure to pay the tax would have subjected him to even further difficulties."

We agree. Although the department argues strenuously that Hagge could have long ago brought suit under Iowa Rules of Civil Procedure 261 and 266 to enjoin the unconstitutional collection of state income tax on his federal pension, we seriously question whether such process would qualify as "meaningful" under a *McKesson* analysis.

The department cites only one case, *Atchison, Topeka & Santa Fe Railway Co. v. Bair*, 338 N.W.2d 338 (Iowa 1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984), in support of its claim that equitable relief would have been available to Hagge and other taxpayers. *Atchison* involved a suit by seven major railway

companies to enjoin the department from collecting a special excise tax on fuels in alleged violation of federal legislation. Although the opinion recites that the plaintiff railroads filed their petition in equity, *see id.* at 342, no further reference is made to this procedural detail. We are persuaded that the department's consent to the procedure was motivated more by desire to promptly resolve a well-orchestrated statutory challenge than by belief that equitable relief is ordinarily available to tax protesters.

More recently—and perhaps more realistically—the department has strongly resisted efforts by taxpayers to seek relief in district court without exhausting administrative remedies. *See, e.g., McManus v. Iowa Dep't of Revenue & Fin.,* 499 N.W.2d 726, 727 (Iowa 1993). Moreover, this court observed in *Shell Oil Co. v. Bair,* 417 N.W.2d 425, 429 (Iowa 1987), that where a constitutional issue directly affects a matter pending before an agency, petitioners are not ordinarily permitted to bypass agency proceedings by bringing an original action in district court. Although the rule did not defeat the petitioner's action in *Shell* because the agency "acquiesced in the filing of an original declaratory judgment action in the district court," *see id.* at 430, we noted that "administrative exhaustion should ordinarily precede a judicial inquiry into the statute's validity." *Id.* at 429. Finally, we note that the position taken here by the department is essentially contrary to that advanced in *Schroeder Oil Co. v. Iowa Department of Revenue & Finance,* 458 N.W.2d 602, 604 (Iowa 1990), where we held that *absence* of predeprivation hearings in the taxing context is amply justified by the practicalities of tax collection. We observed that allowing such hearings would paralyze tax collection efforts and potentially throw the government into chaos. *Id.*

Within the more customary channels for protesting tax assessments, the department cites neither statute nor administrative rule that would permit taxpayers to "withhold payment and then interpose their objections as defenses in a tax enforcement proceeding." *McKesson,* 496 U.S. at 37, 110 S.Ct. at 2250, 110 L.Ed.2d at 36. To the contrary, for the tax years relevant to Hagge's amended returns, Iowa's tax code required any person disputing an assessment to pay "all tax, interest and penalty pertaining to the disputed assessment *prior to the commencement of the contested case*" or post a bond in a comparable amount. Iowa Code § 421.8A (1987) (emphasis added). We note that the statute was struck down as unconstitutional in *Schroeder,* 458 N.W.2d at 604, and ultimately repealed, *see* 1990 Iowa Acts ch. 1232, § 22. But we are convinced that, by *McKesson* standards, tax payment in Iowa continues to be less "voluntary" than "under duress." *See McKesson,* 496 U.S. at 38 n. 21, 110 S.Ct. at 2251 n. 21, 110 L.Ed.2d at 37 n. 21 (taxes paid in order to avoid financial sanction or seizure of real or personal property are paid under "duress"; payments tendered under a system that permits taxpayers to withhold contested tax assessments and challenge their validity in a predeprivation hearing are "voluntary").

For example, Iowa Code section 422.25(2) provides a penalty of seven and one-half percent for failure to pay ninety percent of the tax due when filing the return. *See also* 701 Iowa Admin. Code 10.41(3), (5) (adjusting computation of penalty under section 422.25(2) depending on taxable year). Section 422.26 grants the state a tax lien on all of a taxpayer's property for failure to pay assessments when due. And, of course, interest accrues on all unpaid taxes at a rate tied to the prime. *See* Iowa Code § 421.7(2).

■ For these reasons we reject the department's contention that Iowa affords its taxpayers sufficient predeprivation relief to satisfy the minimum requirements of due process and may thereby avoid the "clear and certain remedy" of refund dictated by *McKesson.* 496 U.S. at 39, 110 S.Ct. at 2252, 110 L.Ed.2d at 37. We likewise reject the department's argument that Hagge paid his state income taxes voluntarily and cannot now claim a refund under section 422.72(3) for taxes not "due" when paid. *Cf. General Elec. Co. v. Iowa State Bd. of Tax Review,* 492 N.W.2d 417, 421 (Iowa

1992) (taxes paid under compromise were voluntary, thereby precluding later refund under section 422.72(3) for taxes "not due").

■ The department also tries to avoid its refund obligation by arguing the alleged inequity of imposing an onerous fiscal burden on the state in order to remedy the relatively modest deprivations suffered individually by Iowans who are also federal retirees. But equity cannot override the clear commands of the Due Process Clause outlined in *Harper* and *McKesson.* Because the state has exacted taxes from its citizens pursuant to an unconstitutional tax scheme, it must afford taxpayers a meaningful opportunity to secure postpayment relief. *McKesson,* 496 U.S. at 22, 110 S.Ct. at 2242, 110 L.Ed.2d at 26–27; *accord Burlington N. R.R. Co. v. Board of Supervisors,* 418 N.W.2d 72, 74 (Iowa 1988). Thus we hold that in order to equalize the tax burden on state and federal retirees, the department must authorize refunds to those taxpayers, like Hagge, who timely filed amended returns within the limitation period. The district court was correct in so ruling.

Finally, we consider the department's request that it be permitted to pay the required refunds on an installment basis, with interest, over a four-year period. Hagge does not resist forbearance, observing in accordance with *McKesson* that serious economic consequences might reasonably impact the "form of and fine-tuning [of] the relief to be provided." *See McKesson,* 496 U.S. at 45, 110 S.Ct. at 2254–55, 110 L.Ed.2d at 41. Under the unique facts of this case, we believe the proposal is reasonable.

Accordingly we affirm the judgment of the district court, modified to permit payment of the required refunds, with interest, over a period of four years.

**AFFIRMED AS MODIFIED.**

All Justices concur except SCHULTZ and CARTER, JJ., who take no part.