Arlo H. HAGGE, Appellee,

v.

IOWA DEPARTMENT OF REVENUE AND FINANCE, E.J. McManus, Lucille M. Hardy, Terry B. Hardy, Arthur L. Mackusick, Jr., Virgil E. Mauer, and Delpha M. Barron, Appellants.

No. 94–749.

Supreme Court of Iowa.

Oct. 25, 1995.

Thomas J. Miller, Attorney General, Harry M. Griger, Special Assistant Attorney General, and Marcia Mason, Assistant Attorney General, for appellant Iowa Department of Revenue and Finance.

David P. McManus of Glasson, Grove, Sole & McManus, P.C., Cedar Rapids, for appellant E.J. McManus.

Lucille M. Hardy, Carlisle, pro se, and for Terry B. Hardy, Des Moines, appellants.

Joanne Moeller, Altoona, for Arthur L. Mackusick, Jr., joined by Virgil E. Mauer, Cedar Falls, and Delpha Barron, Waterloo, appellants.

Gary J. Streit and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee Shuttleworth & Ingersoll, P.C., counsel for Arlo H. Hagge.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The determinative issue in this case is whether our decision in *Hagge v. Iowa Department of Revenue & Finance*, 504 N.W.2d 448, 449 (Iowa 1993) (*Hagge I*) created a "common fund" of federal retiree income tax refunds from which a nonparty law firm can seek a percentage attorney fee award. We conclude no common fund existed from which attorney fees could be drawn. Accordingly, we reverse the district court's judgment that ordered the Iowa Department of Revenue to pay the law firm a five percent common fund attorney fee award from the affected retirees' tax refunds.

I. *Background facts and proceedings.* In spring 1989, the Iowa Federation of Chapters, National Association of Retired Federal Employees (NARFE) retained the law firm of Shuttleworth and Ingersoll, P.C. of Cedar Rapids (Shuttleworth) to attempt to secure state income tax refunds to which its retired members and others believed they were entitled. The federal civil retirees had paid Iowa income tax on their federal employee pensions. They later believed a refund was due to each of them because Iowa did not similarly tax state employee pensions. The retiree taxpayers claimed Iowa's practice violated the constitutional doctrine of intergovernmental tax immunity. *See Hagge I*, 504 N.W.2d at 449.

NARFE desired to expedite the administrative process to ensure a speedy resolution of the issue. Shuttleworth, on behalf of NARFE, commenced negotiations with the Iowa Department of Revenue and Finance (DOR) in October 1989 to secure refunds for federal civil retirees. According to Wayne Gass, a NARFE officer, Shuttleworth and NARFE originally agreed to an *hourly* fee arrangement, and Gass began a fund-raising drive with a goal of $20,000 to finance the prospective litigation.

There are approximately 18,000 retired federal civil service employees in Iowa. Of this number, approximately 6,300 are members of NARFE. Retired federal military employees cannot be NARFE members without also having performed federal civil service.

A. *Hagge I.* Sometime in late 1989 or early 1990, NARFE and DOR agreed to litigate a "test case," with Arlo H. Hagge, a NARFE member, as the named plaintiff, to determine whether a United States Supreme Court case, *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 817, 109 S.Ct. 1500, 1508–09, 103 L.Ed.2d 891, 906 (1989), should be retroactively applied and, thus, pave the way for retiree taxpayer refunds. *See McManus v. Iowa Dep't of Revenue & Fin.*, 499 N.W.2d 726, 727 (Iowa) (referring to what became *Hagge v. Iowa Department of Revenue & Finance*, 504 N.W.2d 448 (Iowa 1993) (*Hagge I*) as a "test case"), *cert. denied,* —— U.S. ——, 114 S.Ct. 580, 126 L.Ed.2d 479 (1993). Upwards of 13,000 retired federal civil service employees (and ultimately military retirees), who had filed amended Iowa income tax returns requesting refunds, would be affected by the resolution of *Hagge I*. The case did not proceed as a class action, and, therefore, affected retirees had no opportunity to "opt out" and avoid the attorney fee claim. *See* Iowa R.Civ.P. 42. Also, there is no evidence in the record that all 13,000 retirees had actual knowledge of the *Hagge I* litigation.

In fall 1991, Shuttleworth contacted NARFE and indicated, due to increased complexity of the case, attorney fees would be greater than Shuttleworth had originally estimated. The firm informed NARFE that litigation through the Iowa supreme court would cost, *if unsuccessful,* no more than $32,000. Shuttleworth and NARFE also discussed a possible contingent fee arrangement at that time.[1]

DOR ultimately denied Hagge's refund request. After DOR's denial, the case made its way through the administrative process and judicial review under Iowa Code chapter 17A, and ultimately came before our court. Shuttleworth claims NARFE had compensated the firm $15,199.14 for its services as of June 1992. At some point after the case was argued before us, but before we issued our decision, Shuttleworth discussed the common fund theory of attorney fee recovery with NARFE officials in the event of a successful outcome. According to Wayne Gass, NARFE negotiated Shuttleworth *down* to a five percent common fund fee request, but never believed the agreement was binding on anyone else.

On July 21, 1993, we decided *Hagge I* in which we ordered DOR to refund monies wrongfully taxed on federal civil service employees' pensions from 1985–88. *Hagge I,* 504 N.W.2d at 452. As of the date *Hagge I* was filed, the tax and interest to be paid by the State to approximately 13,140 federal retirees was approximately $33 million. The holding limited relief to only those taxpayers, such as Hagge, who filed amended returns within the limitation period. *Id.* at 452. Shuttleworth testified that had it billed NARFE its hourly rate through the *Hagge I* decision, the fees would amount to $50,-191.50. Shuttleworth contends it expended approximately 500 hours of work on the case and incurred $19,000 in out-of-pocket expenses. The firm further testified it originally agreed to take the case on an hourly basis,

with $32,000 being the maximum fee in the event of an unsuccessful outcome.

We later modified our decision in *Hagge I* and denied Hagge's and DOR's petitions for rehearing. In Hagge's petition for rehearing, he had requested that we remand the case to the district court to determine the firm's "[e]ntitlement to attorneys fees from the common fund of refunds created by [*Hagge I* ]." [2]

B. *The present action.* After procedendo issued from our court in *Hagge I,* the Shuttleworth law firm then filed in district court a request that the court issue an order prescribing notice and a hearing on its petition for an award of attorney fees. In its petition, Shuttleworth requested the court award the firm attorney fees in the amount of five percent of the refunds *Hagge I* ordered to be paid, with interest, to the affected retirees. This five percent request equates to approximately $1.65 million in attorney fees. The firm concedes that it *first* gave DOR notice of its desire to seek a five percent fee amount in its request for a hearing, nearly four years after the underlying litigation had begun. Shuttleworth later reiterated its request for a common fund fee award in its brief in support of its fee application.

After considering Shuttleworth's request and DOR's resistance, the district court set a hearing to consider the issue of attorney fees whereby DOR was to mail notice of the hearing to affected retirees at Shuttleworth's expense. Thus, confidentiality of identity of the refund retirees would be preserved.

Prior to the hearing, DOR filed a motion to dismiss Shuttleworth's request for a hearing on grounds of inadequate notice and lack of a common fund from which attorney fees could be drawn. Pursuant to the court order, DOR mailed over 13,000 notices to the affected retirees. In the end, approximately 400 affected retirees never received written no-

---

**1.** According to Shuttleworth, the firm did not consider making a common fund fee request until the summer of 1993. The record shows DOR did not learn of this five percent common fund request until October 1993, the time Shuttleworth filed its request for a hearing on attorney fees.

It is unclear from the record what the contingency fee discussions in 1991 involved.

**2.** Shuttleworth assumed in its attorney fee request that *Hagge I* created a common fund. This, however, is the central issue of the present appeal.

tice from the DOR of the upcoming hearing on attorney fees due to outdated addresses.

After receiving notice, approximately 243 affected retirees filed written objections to Shuttleworth's requested fees. At the hearing, 35 retirees appeared and voiced their objections to the fees.

After the hearing, the district court ruled in favor of Shuttleworth, ordering "five percent of the common fund made up of the state tax refunds paid on federal pensions plus interest" created by *Hagge I* to be paid directly by DOR to Shuttleworth.

DOR and various retirees appealed the district court's order,[3] raising several issues including whether *Hagge I* created a common fund. We only address the common fund issue as we find that issue dispositive of the case.[4]

■ II. *Standard of review.* The determination of a common law attorney fee award rests within the district court's equitable powers. *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993). Therefore, our review of the issue is de novo. Iowa R.App.P. 4.

III. *Did Hagge I create a common fund?* Shuttleworth contends our *Hagge I* decision created a "common fund" from which the law firm can petition for attorney fees. After careful evaluation, we conclude *Hagge I* did not create a common fund and, therefore, Shuttleworth's petition for a five percent common fund fee award must fail.

The district court found a common fund was created by the *Hagge I* decision from which Shuttleworth could seek attorney fees. We concluded in *Hagge I* that "in order to

equalize the tax burden on state and federal retirees, the department must authorize refunds to those taxpayers, like Hagge, who timely filed amended returns within the limitation period." *Hagge I*, 504 N.W.2d at 452.

DOR and appellant retirees argue the district court incorrectly held a common fund existed because other federal retirees will receive tax refunds due to *stare decisis* and not from a common fund allegedly created by Shuttleworth. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166–67, 59 S.Ct. 777, 780, 83 L.Ed. 1184, 1186–87 (1939). Appellants assert each retiree has his or her own "fund" for which a timely claim had to be filed and a showing made that Iowa income taxes had been paid on federal pension income. Furthermore, appellants contend there is no single "fund" in which a number of people are interested, and, therefore, no attorney fees may be awarded under a common fund theory. *See* Iowa Code § 422.73(2) (1993).

Shuttleworth contends its efforts did create a common fund from which it can draw a five percent fee award. Shuttleworth argues our decision in a non-tax refund case, *State ex rel. Weede v. Bechtel*, 244 Iowa 785, 56 N.W.2d 173 (1952), is precedent for holding a common fund exists in the present case, and, moreover, such awards are particularly appropriate in tax refund cases. Shuttleworth cites several out-of-state, non-tax refund decisions purportedly supporting its position. *But see Oklahoma Tax Comm'n v. Ricks*, 885 P.2d 1336, 1341 & n. 32 (Okla.1994) (discussing the authority cited by Shuttleworth as the minority view).

■ A. *What is a "common fund?"* An attorney may generally recover fees only for

---

3. E.J. McManus, retired federal district court judge, was permitted to join in DOR's appeal along with military retirees Terry Hardy and Arthur Mackusick, Jr. and civil service retirees Virgil Mauer and Delpha Barron.

4. Appellant retirees join in each of the issues raised on appeal by DOR.

We note that Shuttleworth did not file a petition for common fund attorney fees at any time during the DOR agency proceedings or on judicial review of the agency action in *Hagge I*. Shuttleworth only later sought such relief through the judicial process, rather than through the agency machinery. However, appellants did

not raise that point in the district court or in the present appeal.

Thus, our views in *Soo Line Railroad Co. v. Iowa Department of Transportation*, 501 N.W.2d 525, 530 (Iowa 1993) remain controlling. In *Soo Line*, we stated that the type of relief that courts are authorized to grant in an agency action case is limited by the parameters of Iowa Code section 17A.19(8). *Id.* In the present case, the agency never passed on the attorney fee issue because Shuttleworth never raised the issue before it. Under Iowa Code chapter 17A judicial review, the court ordinarily should not act on an issue not previously presented to the agency.

services rendered pursuant to an express or implied contract. *In re Marriage of Meadows*, 492 N.W.2d 656, 658 (Iowa 1992). In *Meadows*, we discussed exceptions to this general rule, one of those being the "common fund" exception. Under this exception, a lawyer may "assess a fee against a fund which his or her services have recovered or preserved and in which a number of people are interested." *Id.*[5] The rationale entitling counsel to a percentage of a common fund derives from the equitable powers of the courts under the doctrines of quantum meruit, *see Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 120, 5 S.Ct. 387, 389, 28 L.Ed. 915 (1885), and unjust enrichment, *see Trustees v. Greenough*, 105 U.S. 527, 536, 26 L.Ed. 1157 (1881).

The lawyers and judges involved in the underlying litigation, such as *Hagge I*, often assume different roles during a resulting attorney fees dispute:

> In [common fund cases], the plaintiffs' attorney's role changes from one of a fiduciary for the clients to that of a claimant against the fund created for the clients' benefit. The perspective of the judge also changes because the court now must monitor the disbursement of the fund and act as a fiduciary for those who are supposed to benefit from it, since typically no one else is available to perform that function....

*Court Awarded Attorney Fees*, Report of the Third Circuit Task Force (Arthur R. Miller, Reporter), 108 F.R.D. 237, 255 (October 8, 1985). We agree that both the district court and our court play fiduciary roles in this matter, and, therefore, we closely scrutinize the merits of Shuttleworth's attorney fees claim.

B. *Can a common fund exist in a tax refund or other government case?* Shuttleworth offers no case law or statutory law to support its theory of a common fund award

in a tax refund case. Nevertheless, the law firm urges us to exercise our equitable powers and hold it is entitled to receive five percent of the total amount of the individual refunds paid to retirees, including interest.

■ After a thorough examination of the extensive record in the present case and relevant common fund authority, we conclude our decision in *Hagge I* did not create a common fund. Rather, DOR owes each affected retiree a separate refund based on each retiree's individualized circumstances. *See* Iowa Code § 422.73(2).

We refuse to exercise equitable powers to order DOR to take an action unambiguously proscribed by Iowa law. *See Oklahoma Tax Comm'n v. Ricks*, 885 P.2d 1336, 1339 (Okla. 1994) (concluding equity jurisprudence cannot extend the common fund doctrine to a tax refund case). Disbursement of tax refunds is governed in part by Iowa Code section 422.73(2) that states:

> If it appears that an amount of tax, penalty, or interest has been paid which was not due under ... [the personal net income tax division] ... of this chapter, then *that amount shall be credited against any tax due on the books of the department by the person who made the excessive payment, or that amount shall be refunded to the person or with the person's approval, credited to tax to become due.*

(Emphasis added.) Iowa Code section 422.74 also prescribes procedures to be followed in the disbursement of refunds:

> If a refund is authorized ..., the *director shall certify the amount of the refund and the name of the payee and draw a warrant on the general fund of the state in the amount specified payable to the named payee,* and the treasurer of the state shall pay the warrant.

(Emphasis added.) It is clear to us that these provisions leave no room for the dis-

---

**5.** A common fund has been found to exist in several scenarios, but not specifically in tax refund and other cases in which parties seek payment from a governmental treasury. *See* Gregory C. Sisk, *A Primer on Awards of Attorney's Fees Against the Federal Government*, 25 Ariz.St.L.J. 733, 785 (1993). For example, a common fund has been found to exist in actions to: foreclose on railroad or other mortgages, settle the distri-

bution of a decedent's estate, obtain damage awards for violations of antitrust or securities laws, secure pay increases for private or public employees, recover damages for tort injuries such as airline disasters, and recover through stockholder derivative suits funds which lawfully belong to the company. *See* 1 Mary F. Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 2.02[2][b], at 2–13—2–14 (1995).

trict court to pay refunds to anyone other than the taxpayer who is rightfully owed the refund.

Commentary regarding actions against the government also supports our overall conclusion that no common fund can exist in a tax refund case:

> The common fund theory is likely to have limited application in government cases. When the government is held liable to pay benefits or damages to a group of citizens, a separate fund is rarely created from which a fee could be taken. Instead, the money generally remains in the public treasury until actually paid to each individual beneficiary or claimant.

Gregory C. Sisk, *A Primer on Awards of Attorney's Fees Against the Federal Government*, 25 Ariz.St.L.J. 733, 785 (1993) (footnote omitted).

C. *The Ricks decision.* A recent Oklahoma supreme court decision further persuades us that *Hagge I* did not create a common fund. *See Oklahoma Tax Comm'n v. Ricks*, 885 P.2d 1336, 1339–41 (Okla.1994). In *Ricks*, six Oklahoma federal retiree taxpayers sought attorney fees incurred in their efforts to persuade the Oklahoma tax commission to refund pension monies withheld from them under an unconstitutional tax scheme. *Id.* at 1338. As in *Hagge I*, the Oklahoma supreme court in *Strelecki v. Oklahoma Tax Commission*, 872 P.2d 910 (Okla.1993) (as corrected March 23, 1994) ordered the taxing commission to issue refunds to the petitioning taxpayers and those similarly situated. *Strelecki*, 872 P.2d at 924. The *Strelecki* plaintiffs (who were successful in their refund requests on appeal) filed an original action in district court seeking declaratory and injunctive relief claiming the *Strelecki* decision created a common fund. *Ricks*, 885 P.2d at 1338. They claimed *Strelecki* created a common fund, consisting of the refunds due to numerous other similar federal refund retirees, from which a fifteen percent attorney fee award could be drawn and ordered payable by the tax commission

to the six plaintiffs. *Ricks*, 885 P.2d at 1338 n. 5. The Oklahoma tax commission filed an action seeking to prohibit the district court from proceeding further on the attorney fees matter. *Id.* at 1338. Exercising original jurisdiction over the commission's action contesting the taxpayers' claim for attorney fees, the Oklahoma supreme court ruled in favor of the commission and found the underlying *Strelecki* decision did not create a common fund from which the six taxpayers could draw attorney fees:

> The majority rule in state and federal courts is that, *before a money pool* may be subjected to a common-fund attorney's-fee assessment, the *created or preserved fund* must be brought under the *direct supervision and control of the court.*
>
> . . . .
>
> Because a state treasury is in no sense under the custody or control of the district court, any action by that court which would precipitate a flow of monies from the state treasury cannot be deemed one to "create, preserve or protect" a fund. Where a final order merely increases the taxing authority's liability, no segregable fund results from which attorney's fees may be awarded.
>
> . . . .
>
> We are aware of no authority that would allow the district court to interrupt a [tax commission's] lawful ... tax collection/disbursement procedure to rechannel state money by applying it towards the satisfaction of attorney's fees.

*Id.* at 1339–41 (footnotes omitted).

Shuttleworth attempts to distinguish the *Ricks'* decision from the present case, arguing DOR agreed to hold back five percent of the total refunds owed to taxpayers until the attorney fee litigation was concluded. Shuttleworth contends this action, one which it contends was not taken by the Oklahoma tax commission in *Ricks*, created a common fund.[6] We disagree.

---

6. In *Ricks*, the district court did issue a temporary order which restrained the Oklahoma tax commission from paying out to the respective claimants any *interest* earned on the refunds then due to them. *Ricks*, 885 P.2d at 1338. This order was, however, declared unenforceable by the Oklahoma supreme court, which held the order facially void for want of notice to the individual nonparty federal retirees whose re-

DOR's actions did not amount to the district court having control over a common fund. DOR's decision to hold back five percent of each refund was made at the suggestion of the district court during the hearing on attorney fees.[7] Each refund was the individual property or money of each taxpayer, *see* Iowa Code § 422.72(3), and, therefore, the district court had no authority to instruct DOR to withhold the refunds pending the district court's ruling on the common fund issue.

In addition, we reiterate that the collective amount of the approximately 13,000 separate refunds, segregated or not, simply did not and could not represent a common fund from which Shuttleworth could draw a fee.

For the above stated reasons, we conclude our *Hagge I* decision did not create a common fund from which the district court could order attorney fees paid by DOR to the Shuttleworth law firm.

### IV. *Conclusion.*

We conclude *Hagge I*, a tax refund case, did not create a common fund from which Shuttleworth could seek attorney fees, and, therefore, we reverse the district court's judgment that found otherwise. Accordingly, we need not address other issues raised by the parties.

**REVERSED.**

---

funds were sought to be adversely affected. *Id.* at 1339.

**7.** Even though DOR does not challenge the court's authority to instruct DOR to withhold tax refunds from the retiree taxpayers, we believe the district court violated an Iowa statute by instructing DOR to do so. *See* Iowa Code § 422.72(3) (requires DOR to pay refund to tax-

payer or credit the refund against the taxpayer's present or future taxes); *see also Ricks*, 885 P.2d at 1339 (discussing an earlier Oklahoma supreme court action in which that court declared a district court order, instructing the Oklahoma tax commission to withhold paying refund interest back to taxpayers, void).