837 So.2d 647 (2002)
Shirley M. AVANTS and Jim W. Miley
v.
John Neely KENNEDY, Secretary, Department of Revenue and Taxation, State of Louisiana, and Elmer Litchfield, Sheriff of East Baton Rouge Parish.
No. 2002 CA 0830.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
Writ Denied April 4, 2003.
*649 Stan P. Baudin, Patrick W. Pendley, Plaquemine, Steven R. Duke, Andre P. LaPlace, Baton Rouge, Counsel for plaintiffs/appellees, Shirley M. Avants, et al.
Otha C. Nelson, Jr., Baton Rouge, Counsel for defendant/appellant, John Neely Kennedy, Secretary of the Department of Revenue and Taxation, et al.
Before: CARTER, C.J., WHIPPLE and CIACCIO, JJ.[1]
WHIPPLE, J.
In this appeal, the Louisiana Department of Revenue and Taxation ("the Department") challenges the trial court's award of attorney fees to the four attorneys who represented plaintiffs herein, which award was based upon the "fund doctrine" or "common fund doctrine," as recognized in In re Interstate Trust & Banking Company, 235 La. 825, 106 So.2d *650 276 (1958)(on rehearing). For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Appellees (hereinafter referred to as "the Attorneys") are attorneys who were awarded a fee for their efforts in the establishment of a fund for the refund of state sales and/or use taxes paid on the purchase of manufactured and mobile homes, for the benefit of plaintiffs and other non-party purchasers of these homes. The trial court awarded the Attorneys a fee of 28% of the remainder of the common fund, after payment of the claims of the named plaintiffs in several suits, and the Department now challenges that award. Because the principal claim at issue herein is the entitlement of the Attorneys to this fee, a recounting of the chronology of circumstances and events culminating in the establishment of the fund is necessary to understand the basis of their claim for such a fee.
On December 20, 1996, the Attorneys filed a petition for declaratory judgment in this matter on behalf of Shirley M. Avants and Jim W. Miley, seeking a declaration that the Louisiana taxing scheme imposed upon owners and purchasers of new and/or used manufactured and mobile home dwellings violated certain provisions of the Louisiana Constitution, as well as seeking a refund of taxes paid under protest, costs and attorney fees. Therein, they averred that the sale of a mobile or manufactured home was subject to sales tax in Louisiana, pursuant to LSA-R.S. 47:302(A) and 303(B), which define "tangible personal property" to include "trailer" and "house trailer." Additionally, the petition averred that once a mobile home was secured to a location or on a piece of property, it was then placed on the parish tax assessor's ad valorem or property tax rolls and classified as an "improvement for residential purposes," thereby subjecting the owner to property taxes on the improvement. Thus, plaintiffs contended, the imposition of a sales tax upon the sale of a mobile home subjected the owner to double taxation, in violation of due process and equal protection, and they sought a refund of the taxes they had paid under protest, together with costs and attorney's fees. While the original petition in this matter named only two plaintiffs, the Attorneys amended the petition numerous times, to name in excess of 1,700 plaintiffs in the suit.
In addition to the instant matter, the Attorneys also filed in the Nineteenth Judicial District Court two additional suits on behalf of numerous plaintiffs, seeking declaratory and other relief under the same theories advanced in this matter. See Rossi v. Bridges, Secretary, Department of Revenue, State of Louisiana, Docket Number 478,526, Division "M," 19th Judicial District Court, (Rossi) and Stevens v. Crawford, Secretary, Department of Revenue, State of Louisiana, Docket Number 466,122, Division "M," 19th Judicial District Court (Stevens).
In addition to the three suits for declaratory judgment, the Attorneys also filed a petition with the Board of Tax Appeals styled "Class Action Petition and Claim Against the State to Recover Taxes Erroneously Paid Into the Louisiana State Treasury," which was on the behalf of Jim Miley and "all others similarly situated." Jim W. Miley, Individually and on Behalf of All Others Similarly Situated v. John N. Kennedy, Secretary, Department of Revenue and Taxation, State of Louisiana, B.T.A. Docket Number 4695, Board of Tax Appeals (Miley). Through this action, the Attorneys sought to recover sales and use taxes paid for the purchase of *651 new manufactured or mobile homes that had not been paid under protest.
The only case that was fully litigated was the instant suit. Following trial on the merits, the trial court rendered judgment: finding that at the time of purchase, the manufactured or mobile homes purchased by plaintiffs were immovables, and, accordingly, no sales or use taxes were owed by plaintiffs; and declaring that the sales and use tax statutes that subject such sales of new and used manufactured and mobile homes to sales and use taxes are illegal, discriminatory and unconstitutional in that they violate the equal protection clause of the Louisiana Constitution. Accordingly, the trial court ordered that plaintiffs, except for Jim W. Miley, be refunded all sales and use taxes remitted under protest and that all sales and use taxes collected by the Department from future purchases and sales of manufactured and mobile homes be escrowed by the Department through its official agent for collection, the Louisiana Department of Public Safety, Office of Motor Vehicles.
From this judgment, the Department sought to appeal directly to the Supreme Court, challenging the trial court's declaration that the taxing scheme for manufactured and mobile homes was illegal and unconstitutional. The Supreme Court rendered an order transferring the matter to this court. The Court noted that the trial court had made an initial finding that the plaintiffs' manufactured or mobile homes were immovables under Louisiana law at the time of sale, and, as a result, the sales and use taxes were not due or owed by plaintiffs. Thus, the Supreme Court concluded, the trial court had been premature in reaching the constitutionality question and any further statements by the trial court concerning the constitutionality of the statute were dicta. Avants v. Kennedy, 2000 CA 0046 (La.2/2/00), 752 So.2d 150. Accordingly, the matter was transferred to this court for consideration.
On July 17, 2000, after the matter was transferred to this court, the parties filed a joint motion to continue the briefing schedule, representing that they had entered into settlement negotiations, but that a settlement could not be confected prior to the date by which plaintiffs' brief was due. This court rendered an order on July 17, 2000, granting the requested continuance of the briefing schedule.
Thereafter, on August 18, 2000, the Attorneys filed a motion on behalf of plaintiffs to remand the case to the trial court on suggesting that the parties had compromised their dispute, or, in the alternative, to once again continue the briefing schedule. By order dated December 1, 2000, this court denied plaintiffs' motion to remand the case on suggestion of compromise, noting that a motion to remand based on settlement proceedings should be filed as a joint motion. Avants v. Kennedy, 2000 CA 0277 (La.App. 1st Cir.12/1/00).
On December 20, 2000, the Attorneys then filed a motion to continue the briefing schedule contending that a motion to enforce the alleged settlement agreement had been filed by plaintiffs in the trial court and was set for hearing on January 29, 2001. By order dated December 21, 2000, this court continued the briefing schedule in this matter pending further order of this court. Avants v. Kennedy, 2000 CA 0277 (La.App. 1st Cir.12/21/00).
Subsequently, on February 6, 2001, this court, ex proprio motu, issued a show cause order, ordering the parties to show cause by briefs why the instant appeal should or should not be dismissed, based on the information that had been furnished to this court suggesting that the parties had settled their dispute. After briefs were filed, this court, noting that the Department alleged that the trial court had *652 meanwhile entered a judgment enforcing the alleged settlement agreement between the parties, ordered that the appeal be held in abeyance pending either a confirmation from the parties or the trial court that the settlement agreement had been deemed enforceable by the trial court or that an order granting an appeal from any judgment by the trial court enforcing or refusing to enforce the settlement had been entered. Avants v. Kennedy, 2000 CA 0277 (La.App. 1st Cir.3/28/01) (unpublished opinion).
In a separate, related appeal in this matter, the Department had appealed the May 24, 2000 judgment of the trial court, ordering the Department to deposit into an escrow account all taxes collected on the sale of mobile homes after October 22, 1999. This court issued a similar order in that appeal, holding the appeal in abeyance pending some type of resolution of the question of whether the parties had settled the matter. Avants v. Kennedy, 2000 CA 1500 (La.App. 1st Cir.3/28/01) (unpublished opinion).
At the trial court level, the trial court had in fact issued a judgment on February 5, 2001, granting the Attorneys' motion to enforce the settlement agreement and ordering the Department to deliver to plaintiffs in the instant matter the sum of $5,167,194.00 from the escrow account maintained by the Department pursuant to prior order of the court. The Department suspensively appealed the February 5, 2001 judgment, and the appeal was lodged with this court under docket number 2001 CA 0773.
While these matters were pending on appeal, the Louisiana Legislature enacted Act No. 1212 during the 2001 Regular Session, which established a special custodial fund in the state treasury to be known as the "Manufactured and Mobile Homes Settlement Fund" ("the Settlement Fund"), to be funded by the state sales and use taxes on manufactured and mobile homes collected by the Department after October 22, 1999, which the Department had previously been ordered to hold in escrow. The Act further required the Department to pay from this fund the amount necessary to satisfy the February 5, 2001 judgment rendered in favor of plaintiffs in the instant matter in the amount of $5,167,194.00, plus interest from the date of judgment. In light of Act No. 1212, the Department dismissed all of its appeals in the instant matter (2000 CA 0277, 2000 CA 1500 and 2001 CA 0773), on the grounds that the passage of Act 1212 rendered the appeals moot.
Additionally, with regard to the Stevens, Rossi and Miley cases, Act No. 1212 also provided that the Department shall refund to the plaintiffs in those actions the amount of sales or use taxes paid by them. Finally, Act No. 1212 also provided a formula by which other non-party taxpayers, who paid state sales or use tax on the purchase of either a new or used manufactured or mobile home between January 1, 1998 and the effective date of the Act, could receive a refund of at least a portion of those taxes paid.
The Attorneys then filed a rule to show cause, seeking an accounting of all funds escrowed by the Department and a transfer of those funds into the registry of the clerk of court of the trial court. By order dated September 12, 2001, the trial court ordered the Department to transfer all remaining state sales taxes escrowed pursuant to the Stevens, Rossi and present matters into the registry of the clerk of court of the Nineteenth Judicial District Court, thereby allowing those funds to earn interest.
Subsequently, on November 6, 2001, the Attorneys filed a motion for attorneys' fees and costs, contending that they should be *653 awarded 35% of the Settlement Fund because their efforts resulted in the creation, preservation, protection and increase of a substantial common fund for the benefit of many non-party taxpayers. While the Attorneys acknowledge that they were paid attorney fees by the named plaintiffs in these matters, their clients, they sought attorney fees relative to the remaining funds in the Settlement Fund which would enure to the benefit of the non-party taxpayers having an interest in the Settlement Fund.
Without conducting a contradictory hearing on the issue of attorney fees, the trial court rendered an order on November 6, 2001, the same date the motion was filed, awarding the Attorneys an attorney fee of 35% of the Settlement Fund as well as reimbursement of costs.
However, the Attorneys subsequently filed another motion for attorney fees on November 19, 2001, and, in response to that motion, the trial court signed a show cause order, and set the matter for hearing on December 17, 2001. Following a contradictory hearing, the trial court rendered judgment dated February 1, 2002, awarding the Attorneys a fee of 28% of the Settlement Fund and reimbursement of costs in the amount of $11,933.32.
From this judgment, the Department appeals, assigning five errors through which it challenges the trial court's award of a 28% attorney fee from the Settlement Fund. The Attorneys answered the appeal, requesting that this court amend the judgment to award them the requested 35% of the common fund, rather than the 28% award ordered by the trial court.

VALIDITY AND LEGAL EFFECT OF THE FEBRUARY 1, 2002 JUDGMENT
As noted above, the trial court herein rendered two separate judgments awarding the Attorneys a fee from the Settlement Fund: the November 6, 2001 judgment, awarding the Attorneys 35% of the Settlement Fund and costs of $2,261.59; and the February 1, 2002 judgment, awarding the Attorneys 28% of the Settlement Fund and costs in the amount of $11,933.32. The Department appealed only the February 1, 2002 judgment.
As a reviewing court, we are obligated to recognize our lack of jurisdiction if it exists. Accordingly, we must first address the validity and legal effect, if any, of the February 1, 2002 judgment, as a decision on this issue may affect our jurisdiction to entertain the Department's appeal. Starnes v. Asplundh Tree Expert Company, 94-1647, p 4 (La.App. 1st Cir.10/6/95), 670 So.2d 1242, 1245.
Pursuant to LSA-C.C.P. art. 1951, a final judgment may be amended by the trial court at any time on its own motion or pursuant to the motion of any party to alter the phraseology, but not the substance, of a judgment or to correct errors in calculation. Starnes, 94-1647 at p. 5, 670 So.2d at 1245. Thus, under article 1951, a judgment may be amended where the amendment takes nothing from or adds nothing to the original judgment. Where an amendment to a judgment adds to, subtracts from, or in any way affects the substance of the judgment, such judgment may not be amended under LSA-C.C.P. art.1951. Starnes, 94-1647 at p. 5, 670 So.2d at 1246.
The proper vehicle for a substantive change in a judgment is a timely motion for a new trial or a timely appeal. LaBove v. Theriot, 597 So.2d 1007, 1010 (La.1992); Starnes, 94-1647 at p. 5, 670 So.2d at 1246. The Louisiana Supreme Court has also recognized that, on its own motion and with the consent of the parties, the trial court may amend a judgment *654 substantively. LaBove, 597 So.2d at 1010; Villaume v. Villaume, 363 So.2d 448, 451 (La.1978). An amended judgment rendered without recourse to the above procedures is an absolute nullity. LaBove, 597 So.2d at 1010; Starnes, 94-1647 at p. 5, 670 So.2d at 1246. Moreover, a motion for appeal from an invalid judgment is considered untimely, and this court lacks jurisdiction to hear an untimely appeal. Starnes, 94-1647 at p. 6, 670 So.2d at 1246.
In the instant case, although the February 1, 2002 judgment is not labeled as an amended judgment, it is clear that it attempts to substantively alter the attorney fee previously awarded in the November 6, 2001 judgment. However, no timely motion for new trial was filed, nor does the record show that both parties consented to the changes. Nonetheless, because we determine for the reasons that follow that the original November 6, 2001 judgment was an absolute nullity, we conclude that the subsequent February 1, 2002 judgment is a valid judgment, now subject to review.
Pursuant to LSA-C.C.P. art. 963, if an order applied for by written motion is one to which the mover is clearly entitled without supporting proof, the court may grant the order ex parte and without a contradictory hearing. However, if the mover is not clearly entitled to the relief sought or if the relief sought requires supporting proof, the motion shall be served on and tried contradictorily with the adverse party. LSA-C.C.P. art. 963; Conner v. Conner, 481 So.2d 639, 641 (La.App. 1st Cir. 1985).
Article 1312 of the Louisiana Code of Civil Procedure provides that, except in certain enumerated exceptions, "every pleading subsequent to the original petition shall be served on the adverse party as provided by Article 1313 or 1314, whichever is applicable." As set forth in LSA-C.C.P. art. 1313, if a pleading requires no appearance or answer, it may be served by the sheriff or by mail to the adverse party or his counsel of record. However, as provided in LSA-C.C.P. art. 1314, a pleading which is required to be served, but which may not be mailed or delivered under Article 1313 (because it requires an appearance or answer), shall be served by the sheriff. Johnson v. Johnson, 94-0018, p. 4 (La.App. 1st Cir.11/10/94), 645 So.2d 1260, 1261-1262.
Summary proceedings may be used for trial and disposition of an incidental question arising in the course of judicial proceedings, including the award of and the determination of reasonableness of attorney fees, by the filing of a rule to show cause. LSA-C.C.P. art. 2592. However, while citation is not essential in a summary proceeding, a judgment rendered against a defendant who has not been served with process and has not entered a general appearance is an absolute nullity. LSA-C.C.P. art. 2594; Barrios v. Barrios, 95-1390, pp. 6-7 (La.App. 1st Cir.2/23/96), 694 So.2d 290, 294, writ denied, 96-0743 (La.5/3/96), 672 So.2d 691.
The motion for attorney fees filed herein was one in which the Attorneys were not "clearly entitled" to the relief sought, in that it involved a legal question as to the applicability of the common fund doctrine. Moreover, the relief sought required supporting proof and documentation. As such, the motion had to be served on and tried contradictorily with the adverse party. LSA-C.C.P. art. 963; Conner, 481 So.2d at 641. The record before us demonstrates that the original judgment of November 6, 2001, awarding attorney fees, which was signed the same day the motion was filed with the court, was rendered without the motion being served on or tried contradictorily with the Department. Thus, the resulting judgment was *655 an absolute nullity. Barrios, 95-1390 at p. 7, 694 So.2d at 294.
Pursuant to LSA-C.C.P. art.2005, a judgment rendered against a defendant who has not been served with process as required by law is an absolute nullity. See Johnson, 94-0018 at p. 5, 645 So.2d at 1262. Accordingly, because we conclude the November 6, 2001 judgment was an absolute nullity, without any legal effect, we likewise conclude that the February 1, 2002 judgment, while substantively different from the earlier judgment, did not constitute an unauthorized amendment to a prior final judgment. As such, the February 1, 2002 judgment on appeal is a valid judgment, and this court has jurisdiction to entertain the Department's appeal of that judgment.

PROPRIETY OF FILING MOTION FOR ATTORNEY FEES

(Assignment of Error No. 1)
In its first assignment of error, the Department contends that pursuant to LSA-C.C.P. art. 1878, the Attorneys procedurally were required to file a petition to assert their claim for attorney fees, rather than asserting this claim through a motion. The Department argues that because plaintiffs herein sought declaratory relief in the original and amended petitions, the Attorneys were bound to adhere to the procedural requirements of the declaratory judgment provisions, and specifically to the requirements of LSA-C.C.P. art. 1878. The Department further contends that because LSA-C.C.P. art. 1878 requires that a claim for "further relief" on a declaratory judgment "shall be by petition," the Attorneys could not raise the issue of attorney fees through a motion. Accordingly, the Department contends that the trial court erred in failing to dismiss the Attorneys' motion for attorney fees on the grounds that the motion was an invalid mechanism to raise the issue of attorney fees and costs.
In rejecting the Department's argument, we note that the petitions filed by the Attorneys herein requested not only declaratory relief, but also a refund of taxes paid under protest, costs and attorney fees. Thus, if the pleadings set forth the supplementary relief sought, the issue of entitlement to such relief is properly before the court. See Fortenberry v. Dixie Brewing Company, Inc., 368 So.2d 1240, 1241 (La.App. 4th Cir.1979). Accordingly, we conclude that the Attorneys' claim for an attorney fee award was properly raised and properly considered by the trial court. This assignment of error lacks merit.

NECESSITY OF NOTICE TO NON-PARTY CLAIMANTS

(Assignment of Error No. 2)
In this related assignment of error, the Department contends that pursuant to LSA-C.C.P. art. 1878, the Attorneys were further required to give notice of their claim for attorney fees to the non-party taxpayers who were entitled to a refund from the Settlement Fund. Louisiana Code of Civil Procedure article 1878 provides as follows:
Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefore shall be by petition to a court having jurisdiction to grant the relief. If the application is considered sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith. (Emphasis added).
*656 Citing this article, the Department argues that the non-party taxpayers with an interest in the Settlement Fund had a right to defend their interest in refuting the attorney fee award and, correspondingly, that the Attorneys were required to provide reasonable notice to these individuals to allow them the opportunity to defend their interests. Accordingly, the Department requests that this court reverse the trial court's judgment awarding attorney fees and costs and remand the case to the trial court to require the Attorneys to provide reasonable notice to any adverse party having an interest in the Settlement Fund.
However, as noted by the Attorneys, this issue regarding notice was never raised by the Department in the trial court below and, thus, should not be considered by this court on appeal. See Uniform Rules, Courts of Appeal, Rule 1-3; Salassi v. State, Department of Public Safety and Corrections, Administrative Hearing Section, 96-0321, p. 6 (La.App. 1st Cir.11/15/96), 684 So.2d 1014, 1018. Nonetheless, we simply note that, by its clear wording, LSA-C.C.P. art. 1878 requires notice only to an "adverse party." The term "party" refers to one who has filed a claim, who has been named in a suit, or who, although unnamed, has been allowed to enter a general appearance and seek certain relief. Cormier v. Roberson, 96-1107, p. 4 (La.App. 1st Cir.3/27/97), 691 So.2d 807, 809. The non-party taxpayers who may benefit from the creation of the Settlement Fund were not parties to this matter. As such, the Attorneys were not required to provide them with notice pursuant to LSA-C.C.P. art. 1878.[2]See generally Zurich-American Insurance Company v. State Worker's Compensation Second Injury Board, 600 So.2d 883, 885 (La.App. 1st Cir.1992).

AWARD OF ATTORNEY FEES PURSUANT TO THE FUND DOCTRINE

(Assignment of Error No. 3)
In its third assignment of error, the Department contends that the trial court erred in finding that the Attorneys were entitled to recover an attorney fee from the Settlement Fund pursuant to the "fund doctrine" or "common fund doctrine."
Generally the right of an attorney to remuneration for services is dependent upon a contract, either express or implied. Louisiana State Mineral Board v. Abadie, 164 So.2d 159, 166 (La.App. 1st Cir.1964). An exception to this rule is recognized, however, in those instances where an attorney alone and at his own expense has successfully maintained an action for the preservation, protection, increase or creation of a fund in which persons other than his own clients may share or from which they may benefit. Kirkpatrick v. Young, 456 So.2d 622, 625 (La. 1984); In re Interstate Trust & Banking Company, 235 La. at 842, 106 So.2d at 282 (on rehearing); Abadie, 164 So.2d at 166. In such instances, equity requires that all who benefit must pay the costs and expenses incident thereto, including attorney's fees. Abadie, 164 So.2d at 166. The exception allowing for the award of an attorney fee even in the absence of a contract has been termed the "fund doctrine" or "common fund doctrine."
In In re Interstate Trust and Banking Company, a fund amounting to more than $700,000.00 had been created and brought into existence due solely to the efforts of *657 the attorneys therein. The attorneys represented some of the bank's depositors and creditors in opposing certain tableaus of distribution in a liquidation matter, because of a failure to provide for the payment of interest on unpaid balances that had been frozen. As a result of their efforts, a judgment was rendered ordering the payment of legal interest of all depositors and creditors, including those who failed to oppose the distribution. In re Interstate Trust & Banking Company, 235 La. at 828-829, 106 So.2d at 277.
In holding that the attorneys were entitled to a reasonable fee to be paid out of the interest fund, the Supreme Court noted that, except for the services of the attorneys, none of the depositors would have received any interest on any of their frozen deposits. Consequently, all depositors as a class benefited and were enriched by these attorneys' efforts. Thus, the court determined that under these facts and circumstances, the attorneys had brought themselves within the scope of the "fund doctrine" and, as such, were entitled to recover a reasonable fee for their services. In re Interstate Trust & Banking Company, 235 La. at 842-843, 106 So.2d at 282 (on rehearing).
Similarly, in Abadie, this court applied the fund doctrine to award an attorney fee to an attorney, whose services resulted in the lease of a tract of land owned by approximately 4,000 co-owners for mineral development and the establishment of a fund held in the registry of the district court, consisting of bonuses and royalties collected for the benefit of all co-owners. Abadie, 164 So.2d at 161-165. The attorney's efforts resulted in aggregate bonuses of $660,000.00, accumulated royalties of approximately $1,000,000.00 and continuing royalties accruing at a rate of approximately $240,000.00 per year. Abadie, 164 So.2d at 169.
In awarding the attorney a percentage of the pro rata share of the aggregate bonuses of each co-owner, this court thoroughly detailed the tremendous efforts of the attorney in seeing the lease of the property and resulting bonuses and royalties to fruition. The attorney had been retained by one of the co-owners to explore the possibility of leasing the tract for mineral development. However, because of the vast number of co-owners living throughout the state and nation, it became apparent that granting an effective mineral lease on the property was only a remote possibility, if not an absolute impossibility. Abadie, 164 So.2d at 161.
Thus, the attorney sought to have special legislation enacted to authorize the granting of a valid mineral lease of property owned by large numbers of co-owners. Largely through his efforts, the Legislature enacted Act No. 513 of the Regular Session of 1952, LSA-R.S. 30:181-30:188. This legislation provided that property owned in indivision by 500 or more persons could be leased for mineral development at the request of fifty or more co-owners. Abadie, 164 So.2d at 162.
The attorney then initiated the procedure for leasing of the land as prescribed by Act No. 513, prepared a special lease form to be used for such a lease, defended a constitutional attack on Act No. 513 before the district court and the Louisiana Supreme Court, engaged in extended dealings with the State Mineral Board to ensure optimum lease of the property, and instituted mandamus proceedings to compel the Board's deposit of accumulated bonuses and royalties into the registry of the district court for eventual disbursement. Abadie, 164 So.2d at 162-165.
Concluding that the fund in question existed because of the perseverance and determination of the attorney which made possible the leasing of the subject property *658 and that his efforts undisputedly redounded to the benefit of all co-owners, this court invoked the fund doctrine to render an award of 17% of the aggregate bonuses. Abadie, 164 So.2d at 164, 169-170.
Turning to the instant case, we likewise conclude that the fund doctrine is applicable under the facts and circumstances of this case. As detailed in the facts and procedural history above, the efforts of the Attorneys herein clearly resulted in the creation, preservation, protection and increase in the Settlement Fund, for the benefit of all taxpayer beneficiaries. In addition to filing the instant suit (as well as the Rossi and Stevens suits) on behalf of numerous taxpayers who paid the taxes at issue under protest, the Attorneys also instituted an action with the Louisiana Board of Tax Appeals in an attempt to recover taxes paid by individuals where such payments were not made under protest (the Miley suit). In direct response to these suits, the Legislature enacted Act No. 1212, which not only provided for a refund of the taxes paid to the named plaintiffs in these suits, but also provided for a refund for the benefit of non-party taxpayers. Clearly, but for the actions of the Attorneys, no fund would have been created for the non-party beneficiaries to receive a refund of state sales taxes paid on manufactured and mobile home purchases.[3] Accordingly, we find no error by the trial court in its conclusion that the fund doctrine was applicable herein and entitled the Attorneys to an attorney fee from the Settlement Fund.[4]See In re Interstate Trust & Banking Company, 235 La. at 842-843, 106 So.2d at 282 (on rehearing), and Abadie, 164 So.2d at 169-170.

REASONABLENESS OF ATTORNEY FEE AWARD

(Assignment of Error No. 5; Answer to Appeal)
With regard to the amount of the fee awarded, 28% of the Settlement Fund, the Department argues that the award, which amounts to a fee in excess of $7,000,000.00, is abusively high. The Attorneys, on the other hand, have answered the appeal, requesting that this court *659 increase the award to 35% of the Settlement Fund.
The award of attorney fees from a common fund requires a court to exercise broad discretion by applying a reasonableness standard in setting the fee. In determining the amount to be awarded as reasonable attorney fees, the court should consider the extent and nature of the services rendered by the attorneys; the labor, time and trouble involved; the results achieved; the character and importance of the matter; the amount of money involved; the learning, skill, and experience exercised; and the difficulty of the legal problems. The court may also consider the terms of the contracts for compensation which the attorneys had with their original clients. In re Interstate Trust & Banking Company, 235 La. at 844, 106 So.2d at 282.
In the instant case, the Attorneys expended in excess of 2,500 documented hours and pursued this matter over a course of six years. John Perry, a practicing attorney in the Baton Rouge area with twenty-four years of experience, testified as to the talent and skill exercised by the Attorneys in this matter and further noted that the Attorneys had actively involved all three branches of government in their pursuit of this matter. The Attorneys participated in numerous appeals and extended settlement negotiations. Moreover, the Settlement Fund created involves millions of dollars which will be returned to Louisiana taxpayers.
Given the vast amount of work performed by the Attorneys over the course of six years as well as the skill, ingenuity and diligence resulting in the creation, preservation and increase of the Settlement Fund, we are unable to say the trial court abused its discretion in awarding the Attorneys a fee of 28% of the Settlement Fund.[5] Accordingly, we decline to either increase or decrease this award on appeal.

CONCLUSION
For the above and foregoing reasons, the February 1, 2002 judgment of the trial court, awarding the Attorneys an attorney fee of 28% of the Settlement Fund and costs, is affirmed. Costs of this appeal in the amount of $10,244.61 are assessed against the State of Louisiana, through the Department of Revenue and Taxation.
AFFIRMED.
NOTES
[1] Judge Philip C. Ciaccio (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We further note that this litigation was not a class action wherein notice would have been statutorily mandated by LSA-C.C.P. art. 594(A)(2).
[3] Relying upon two out-of-state cases, Hagge v. Iowa Department of Revenue and Finance, 539 N.W.2d 148, 152 (Iowa 1995), and Oklahoma Tax Commission v. Ricks, 885 P.2d 1336 (Okla.1994), the Department additionally argues that the fund doctrine cannot be applied to tax refund cases. We find no merit to this argument. In the Hagge and Ricks cases, while the attorneys involved were successful in securing entitlement to a refund on behalf of certain non-party taxpayers, the courts disallowed recovery of attorney fees because no common fund had been created from which those refunds were to be paid. Hagge, 539 N.W.2d at 149, 153-154; Ricks, 885 P.2d at 1338, 1341. In both cases, the courts further held that before a money pool may be subjected to a common fund attorney fee assessment, the created or preserved fund must be brought under the direct supervision and control of the court. Hagge, 539 N.W.2d at 153-154; Ricks, 885 P.2d at 1339-1340.

The court in Hagge opined that the common fund doctrine would likely have limited application in government cases, because the money from which any benefits or damages are paid generally remains in the public treasury until paid to each individual beneficiary, rather than a separate fund being created. Hagge, 539 N.W.2d at 153. However, in the instant case, that is precisely what happened. Because a common fund was created herein and was brought under the direct supervision and control of the trial court, the present case is readily distinguishable from these cases relied upon by the Department.
[4] Because we affirm the trial court's award of an attorney fee pursuant to the fund doctrine, we pretermit discussion of the Department's fourth assignment of error, in which it argues that the trial court erred in alternatively concluding that the award was warranted under the doctrine of negotiorum gestio.
[5] While the Attorneys had entered into contracts with their clients for a fee of 35% of the amount recovered, we note that those named plaintiffs were refunded the entire amount of taxes they paid, whereas the non-party taxpayers will receive a refund pursuant to the formula set forth in Act No. 1212.